**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANSARULLAH DAWOUDI, | ) | |
| on behalf of plaintiff and the | ) | |
| class members described herein, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 19-cv-3783 |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| doing business as MR. COOPER | ) | |
| and TIAA FSB, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT – CLASS ACTION

1.      Plaintiff Ansarullah Dawoudi brings this action to secure redress from unlawful credit and collection practices engaged in by defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") on behalf of TIAA FSB, doing business as EverBank ("TIAA"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 ("RESPA"), and state law.

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. 15 U.S.C. §§ 1692d, 1692e, and 1692f. It also requires debt collectors to give debtors certain information. 15 U.S.C. § 1692g.

3.      In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

1

debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

4.     Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.     The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.     Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq.*

7.     Plaintiff seeks redress under RESPA, which requires mortgage servicers such as Nationstar to respond to written inquiries from borrowers.

8     Plaintiff seeks redress for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), which requires mortgage servicers to provide information regarding the payoff amount on a loan.

## **VENUE AND JURISDICTION**

9.     This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 12 U.S.C. §2605 (RESPA),15 U.S.C. § 1639g (TILA), 28 U.S.C. §1331, 28 U.S.C. §1332(d), and 28 U.S.C. §1337, and 28 U.S.C. §1367.  On information and belief, the total amount in controversy exceeds $5 million, and there are more than 100 class members.

10.     Venue and personal jurisdiction in this District are proper because:

a.  Defendants' communications were received by Plaintiff within this District;

b.  Each Defendant does or transacts business within this District.

## PARTIES

11.  Plaintiff Ansarullah Dawoudi resides (with his wife) in a home which he owns in Chicago, Illinois.

12.  Defendant Nationstar is a limited liability company organized under Delaware law with principal offices at 8950 Cypress Waters Blvd., Dallas, TX 75019. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.  Defendant Nationstar has two managers, Jay Bray and Christopher Marshall. On information and belief, both are residents and citizens of Texas.

14.  Defendant Nationstar is therefore a citizen of Delaware and Texas.

15.  Defendant Nationstar is a "special servicer," which is mortgage industry jargon for a servicer that specializes in delinquent and defaulted loans.

16.  Defendant Nationstar engages in special servicing for others.

17.  Defendant Nationstar uses the mails and telephone system in conducting its special servicing business.

18.  Defendant Nationstar seeks and obtains ratings as a special servicer.

19.  Defendant Nationstar is a debt collector as defined in the FDCPA and has been found to be a debt collector in this District. *Harris v Nationstar Mortg.*, No. 16 C 11381, 2017 U.S. Dist. LEXIS 2653 (N.D.Ill. Jan 9, 2017).

20.  Defendant Nationstar had, as of mid-2017, a servicing portfolio of 2.59 million

3

loans with an unpaid principal balance of about $428 billion.

21.     About 8-10% of all loans are FHA loans.

22.     On information and belief, Nationstar is servicing 100,000 or more FHA loans.

23.     Defendant TIAA is a federally chartered banking corporation with principal offices at 501 Riverside Avenue, Jacksonville, FL 32202.  It is a citizen of Texas.

24.     TIAA is engaged in the business, among others, of owning residential mortgage loans.

25.     As of December 31, 2018, according to its filings with the Office of the Comptroller of the Currency, TIAA owned $18,201,750,000 in mortgage loans secured by residential properties.

## STANDING

26.     Plaintiff has standing because he has suffered an injury-in-fact as the result of Defendants' actions.  Specifically, Defendants have misrepresented the amount of the alleged debt they are attempting to collect, which is enough to establish Article III standing despite the fact that plaintiff never paid the illegal amounts sought.  *See*, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 593-594 (7th Cir. 1998); *Phillips v Asset Acceptance Corp*. 736 F.3d 1076, 1082-83 (7th Cir. .2013).

27.     Because Defendants' misrepresentations as to the amounts owed deprived plaintiff of accurate material information that posed a risk of real harm, plaintiff satisfies the concrete-harm requirement.  *See*, *e.g.*, *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258, at *14-16 (N.D. Ill. July 11, 2016).

## FACTS

28.     Plaintiff has a residential mortgage loan secured by his residence and obtained on December 21, 2012.

29.     The loan is an FHA loan.

30.     Nationstar acquired servicing of Plaintiff's loan on or about November 4, 2014.

31.     At the time, the loan was delinquent.

32.     The loan was accelerated on or before November 16, 2015.

33.     Nationstar is servicing the loan for TIAA, FSB, d/b/a EverBank, which owns the loan.

### Refusal to justify charges

34.     Plaintiff submitted "qualified written requests" to Nationstar asking for invoices showing the legitimacy of various fees and charges added to plaintiff's loan (Appendix A).

35.     By letter of February 12, 2019 (Appendix B), Nationstar refused to provide such information, claiming that "Mr. Cooper is not obligated to respond to requests seeking, confidential, proprietary, or privileged information," and that "invoices to our vendors and our Foreclosure Attorney" constitute such information.

36.     Proof the services were in fact billed for or paid are not confidential, proprietary or privileged information.

37.     It is the policy and practice of Nationstar to add sums to borrower's accounts while refusing to provide invoices or other documentation that the sums were actually incurred in the amounts claimed.

**Late charges**

38.     The Amended Payoff Statement sent to Plaintiff by Nationstar (Appendix C) states that "If any scheduled payment is received after the Late Charge grace period as set forth in the applicable Note, a Late Charge of $26.20 will be assessed."

39.     The quoted language in Appendix C is standard language used by Nationstar.

40.     After a loan is accelerated, there are no scheduled payments, and no late charges are appropriate.  *See Wells Fargo Bank Minn. N.A. v. Guarnieri*, 308 B.R. 122, 128 (D. Conn. 2004) ("However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments."); *Jackson v. Carrington Mortg. Servs.*, No. 17-60516-CIV, 2017 U.S. Dist. LEXIS 191932, at *9 (S.D. Fla. Nov. 16, 2017).

**Inspection fees**

41.     Under FHA regulations, 24 C.F.R. § 203.377, "The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. . . ."

42.     The FHA interprets the regulation to mean that once a property has been found to be occupied, no further inspections may be charged. *HUD Handbook 4330.1* Ch. 9—9(A)(c)(2)(d); *Mortgagee Letter 81-26* 1981 WL 389744 at *1 (June 16, 1981).

43.     Furthermore, the FHA regulations are incorporated into the note and mortgage, and the restriction limits what may be charged to the borrower. *In re Ruiz,* 501 B.R. 76, 79 (E.D. Pa. 2013); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.,* 4:13cv669, 2016 WL 393868 (E.D. Ark. Jan 29, 2016).

44.     Plaintiff has continually occupied the property.

45.     Nationstar was aware of Plaintiff's occupancy of the property as it personally serviced him foreclosure papers at the property address. (Appendix D).

46.     Notwithstanding Nationstar's knowledge of Plaintiff's occupancy of the property, Nationstar charged Plaintiff for $265.00 in property inspection fees.

47.     On information and belief, Nationstar's inspections confirmed the property was occupied.

48.     Nationstar sent Plaintiff statements charging $265.00. (Appendices E-I).

49.     Such fees were unauthorized and improper.

50.     Plaintiff has spent money challenging Nationstar's fees, in that he contacted Nationstar to dispute the inspection fees via certified mail, and spent time doing so.

**Payoff Statement Request**

51.     On March 28, 2019, Plaintiff sent to Nationstar, an agent of TIAA, a request for a mortgage payoff statement via certified mail. (Appendix J).

52.     United States Postal Service tracking shows that Plaintiff's March 28, 2019 payoff statement request was delivered to Nationstar on Tuesday, April 2, 2019. (Appendix K).

7

53. Plaintiff received a response dated April 18, 2019 which incorrectly stated that Nationstar received Plaintiff's payoff statement request on April 4, 2019. The response failed to provide the payoff statement and instead directed Plaintiff to contact Nationstar for reasons that were not explained. (Appendix L).

54. As of the date of this filing, Nationstar has not provided the payoff statement as Plaintiff requested.

## <u>COUNT I—FDCPA—UNLAWFUL INSPECTION FEES</u>

55. Plaintiff incorporates paragraphs 1-54.

56. This claim is against Nationstar.

57. Nationstar violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by charging Plaintiff for unauthorized property inspection fees and representing that it had the right to collect a balance that included unauthorized property inspection fees.

58. Section 1692e of the FDCPA provides as follows:

> **§ 1692e.  False or misleading misrepresentations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **…**
>
> **(2)  The false representation of—**
>
> **(A)  the character, amount, or legal status of any debt; or**
>
> **(B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**
>
> **…**
>
> **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

8

...

**(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

59.     Defendant violated § 1692e and e(2)(A) of the FDCPA when it made false, deceptive, or misleading representations in communications mailed to plaintiff regarding the amount of debt owed by plaintiff, as the amount due could not legally include property inspection fees.

60.     Defendant violated § 1692e(5) of the FDCPA by threatening to charge property inspection fees when property inspection fees could not legally be charged, and/or when it did not intend to charge property inspection fees.

61.     Defendant violated § 1692e(10) of the FDCPA by falsely and deceptively threatening to charge property inspection fees in order to induce plaintiff to pay a debt, when in fact such property inspection fees were not legal, and could not be sought.

62.     Section 1692f of the FDCPA provides as follows:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

63.     Defendant violated 1692f and f(1) by attempting to collect amounts from plaintiff that were not authorized by the agreement creating the debt or permitted by law, namely "property inspection fees."

9

## CLASS ALLEGATIONS

64.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

65.     The class consists of (a) all individuals with FHA loans (b) who live in mortgaged property (c) which loan is owned by Nationstar (d) who were charged property inspection fees by Nationstar while still occupying the property, (e) where either the charge was made or a statement referring to the charge was sent on or after a date one year prior to the filing this action (f) whose loans were delinquent when defendant Nationstar first became involved with the loans.

66.     On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

67.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether the inspection fees were authorized and whether imposition of and charging for the inspection fees violated the FDCPA.

68.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

69.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

70.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible;

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.      Statutory damages;

      ii.      Actual damages;

      iii.      Attorney's fees, litigation expenses, and costs of suit;

      iv.      Such other and further relief as the Court deems proper.

## COUNT II—FDCPA—LATE CHARGES

71.      Plaintiff incorporates paragraphs 1-54.

72.      This claim is against Nationstar.

73.      Defendant cannot legally impose late charges for failure to make monthly payments after the loan has been accelerated, and reinstatement had not been sought, as in this case. *Rizzo v. Pierce & Assocs*., 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated").

74.      While a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower.

75.      Defendants' threat that late fees will be imposed is deceptive, false and misleading, as late fees cannot be imposed in a case like this where the loan has been accelerated and no reinstatement has been sought.

11

76.     Defendant violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by stating that it had the right to charge late charges on a loan that had been accelerated, except in the context of reinstatement.

77.     Section 1692e of the FDCPA provides as follows:

**§ 1692e.  False or misleading misrepresentations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**…**

**(2)  The false representation of—**

**(A)  the character, amount, or legal status of any debt; or**

**(B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**…**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**…**

**(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

78.     Defendant violated § 1692e and e(2)(A) of the FDCPA when it made false, deceptive, or misleading representations in communications mailed to plaintiff regarding the amount of debt owed by plaintiff, as the amount due could not legally include late fees after the mortgage loan had been accelerated and the threat to impose said fees was false.

79.     Defendant violated § 1692e(5) of the FDCPA by threatening to charge late fees when late fees could not legally be charged, and/or when it did not intend to charge late fees as the loan was accelerated.

12

80.     Defendant violated § 1692e(10) of the FDCPA by falsely and deceptively threatening to charge late fees in order to induce plaintiff to pay a debt, when in fact such late fees were not legal, and could not be sought.

81.     Section 1692f of the FDCPA provides as follows:

>**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
>**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

82.     Defendants violated 1692f and f(1) by attempting to collect amounts from plaintiff that were not authorized by the agreement creating the debt or permitted by law, namely "late charges."

## CLASS ALLEGATIONS

83.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

84.     The class consists of (a) all individuals (b) who live in mortgaged property (c) whose loans were delinquent when defendant Nationstar first became involved with the loans, (d) to whom defendant Nationstar sent a document, (e) on or after a date one year prior to the filing of this action, and on or before a date 21 days after the filing of this action (f) which document stated that Nationstar had the right to charge late charges (g) at a time when the loan was accelerated.

85.     On information and belief, the class is so numerous that joinder of all members is not practicable.

86.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether defendant engages in a practice of stating that it has the right to charge late charges when it does not.

87.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

88.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

89.     A class action is superior for the fair and efficient adjudication of this matter, in that:

       a.     Individual actions are not economically feasible.

       b.     Members of the class are likely to be unaware of their rights;

       c.     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

       i.     Statutory damages;

       ii.     Attorney's fees, litigation expenses and costs of suit;

       iii.     Such other and further relief as the Court deems proper.

## COUNT III—RESPA

90.     Plaintiff incorporates paragraphs 1-54.

91.     This claim is against Nationstar.

92.     Plaintiff requested documentation of fees and charges added to loan balance.

93. Nationstar violated 12 U.S.C. §2605(e) by refusing to provide evidence that fees and charges added to plaintiff's account were genuine or actually incurred.

94. Nationstar's violation is willful and causes damage equal to the amounts added.

95. Nationstar has engaged in a pattern of such conduct, as demonstrated by the multiple violations alleged in the instant litigation as well as numerous lawsuits raising similar violations. *See e.g., Renfroe v. Nationstar Mortg., LLC,* 822 F.3d 1241, 1247 (11th Cir. 2016); *Ponds v. Nationstar Mortgage, LLC,* 15-cv-8693, 2016 WL 3360675 at *7 (C.D. Cal June 3, 2016); *Gray v. Nationstar Mortg., LLC,* 10-cv-14375, 2012 WL 359764 at *4 (S.D. Mich. February 2, 2012); *Diffely v. Nationstar Mortgage, LLC,* 17-cv-1370, 2018 WL 1737780 at *9 (W.D. Wash. April 11, 2018); *Geoffrion v. Nationstar Mortgage LLC,* 182 F.Supp.3d 648, 667-68 (E.D. Tex. 2016). *See also,* Consent Order attached as Appendix M.

## CLASS ALLEGATIONS

96. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

97. The class consists of (a) all individuals (b) who lived in mortgaged property (c) where the borrower requested documentation of fees and charges added to the loan balance and (d) Nationstar refused to provide such documentation on the ground that such documentation was proprietary or privileged (e) which request was on or after a date 3 years prior to the filing of this action, and on or before a date 21 days after the filing of this action.

98. On information and belief, the class is so numerous that joinder of all members is not practicable.

99.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.      Whether defendant engages in a practice of refusing to document fees and charges added to the debt on the ground that such documentation is proprietary or privileged;

      b.      Whether such action violates RESPA.

100.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

101.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

102.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement mechanism under RESPA.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of plaintiff and against Nationstar for:

      i.      Statutory damages;

      ii.      Actual damages;

      iii.      Attorney's fees, litigation expenses and costs of suit;

      iv.      Such other or further relief as the Court deems proper.

16

## COUNT IV—TILA

103.    Plaintiff incorporates paragraphs 1-54.

104.    This is an individual claim against both Defendants.

105.    Defendants violated 15 U.S.C. § 1639g, which requires a mortgage servicer to "send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower."

106.    Defendants also violated the implementing regulation, 12 C.F.R. § 1026.36, which provides as follows:

> **In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer . . . must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement.**

107.    On April 2, 2019, Nationstar received a written request from Plaintiff requesting Plaintiff's payoff balance. Nationstar has yet to provide the payoff statement as of this filing, more than 7 business days afterward.

108.    The amount of time that has passed between Nationstar receiving Plaintiff's request and the filing of this complaint is unreasonable.

17

109.    Nationstar's "response" dated April 18, 2019 misstated the date Nationstar received Plaintiff's March 28, 2019 payoff statement request and failed to provide any information as to why Nationstar failed to provide the payoff statement or when Nationstar would provide the payoff statement.

110.    Instead, Nationstar improperly put a condition precedent upon Plaintiff to call Nationstar without explaining why he should be calling or how Plaintiff calling would affect Defendant's ability to provide a payoff statement.

111.    15 U.S.C. § 1640 provides that any creditor who fails to comply with the requirements of 15 U.S.C. § 1639g is liable for actual damages, statutory damages, costs and attorney's fees, and other relief.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of plaintiff and against Defendants for:

i.      Statutory damages;

ii.     Actual damages;

iii.    Attorney's fees, litigation expenses and costs of suit;

iv.     Such other or further relief as the Court deems proper.


/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
Mary Frances Charlton
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)

18

Email address for service:  courtecl@edcombs.com


## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.


<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)