**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANSARULLAH DAWOUDI,**<br>**on behalf of plaintiff and the**<br>**class members described herein,**<br><br>    **Plaintiff,**<br><br>   **vs.**<br><br>**NATIONSTAR MORTGAGE LLC,**<br>**doing business as MR. COOPER and**<br>**TIAA FSB,**<br><br>    **Defendants.** | **Case No: 1:19-cv-3783**<br><br>Honorable John Robert Blakey |

<u>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

   **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Evidence 201, Defendants Nationstar Mortgage LLC, d/b/a Mr. Cooper. ("Nationstar") and TIAA, FSB d/b/a TIAA Bank ("TIAA Bank"; collectively "Defendants"), by counsel, respectfully request that the Court take judicial notice of the following attached documents in support of Defendants' Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6):

   **Exhibit 1**, Plaintiff Ansarullah Dawoudi's residential mortgage loan obtained on December 21, 2012 and recorded in the Cook County Recorder of Deed as Document Number 1300857517 on January 8, 2013;

   **Exhibit 2**, the Class Action complaint filed on February 18, 2016 in *Ansarullah and Daphne Dawoudi v. Nationstar Mortgage, LLC,* Case No. 16-cv-2356 in the Northern District of Illinois.

   **Exhibit 3,** the Stipulation of Dismissal filed on February 27, 2017 in *Ansarullah and Daphne Dawoudi v. Nationstar Mortgage, LLC,* Case No. 16-cv-2356 in the Northern District of Illinois.

39554364

Under Rule 201 of the Federal Rules, courts take judicial notice of matters filed in other courts or that are otherwise contained in the public record.  *See In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of dockets and opinions of another district court); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) (holding that courts may take judicial notice of proceedings in other courts).

Accordingly, Defendants request that the Court take judicial notice of Exhibits 1 through 3.

Dated:      July 30, 2019                                     Respectfully submitted,

                                                             **NATIONSTAR MORTGAGE LLC**
                                                             **D/B/A MR. COOPER**

                                                             **TIAA FSB D/B/A AS EVERBANK**


                                                             By: */s/ Molly S. DiRago*
                                                                  Of Counsel

                                                             Mary ("Molly") S. DiRago (IL Bar No.
                                                             6282757)
                                                             Counsel for Defendants
                                                             TROUTMAN SANDERS LLP
                                                             One North Wacker Drive, Suite 2905
                                                             Chicago, IL 60606
                                                             Telephone: (312) 759-1926
                                                             Email: Molly.DiRago@troutman.com

# EXHIBIT 1

# Illinois Anti-Predatory Lending Database Program

## Certificate of Compliance

Mail To: *IXI*
Carrington Title Partners, LLC
1919 S. Highland Ave., Ste 315-B
Lombard, IL 60148
(630)317-0049

*2012 - 04294DB*

**Report Mortgage Fraud**
**800-532-8785**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
1300857517

Doc#: 1300857517 Fee: $56.00
Karen A. Yarbrough RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/08/2013 12:27 PM Pg: 1 of 10

---

The property identified as: **PIN:** 13-10-309-019-0000

**Address:**
**Street:** 4909 N KRUGER AVE
**Street line 2:**
**City:** CHICAGO  **State:** IL  **ZIP Code:** 60630

**Lender:** Freedom Mortgage Corporation

**Borrower:** Ansarullah Habeebullah S. Dawoudi

**Loan / Mortgage Amount:** $145,874.00

Pursuant to 765 ILCS 77/70 et seq., this Certificate authorizes the County Recorder of Deeds to record a residential mortgage secured by this property and, if applicable, a simultaneously dated HELOC.

**Certificate number:** 6C85CA4B-F482-4DAB-9DA3-1F8968520F12  **Execution date:** 12/21/2012

~~Return To~~:
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001

**Prepared By:**

STEPHANIE SOURAPAS

---

**State of Illinois**

# MORTGAGE

| FHA Case No. |
|---|
| 137-7072883-703 |

MIN 1000730-0086264470-5

THIS MORTGAGE ("Security Instrument") is given on December 21, 2012
The Mortgagor is Ansarullah Habeebullah S Dawoudi, a married person.

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Freedom Mortgage Corporation

("Lender") is organized and existing under the laws of The State of New Jersey , and
has an address of 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054
. Borrower owes Lender the principal sum of
One Hundred Forty Five Thousand Eight Hundred Seventy Four and 00/100
Dollars (U.S. $145,874.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2043
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Illinois Mortgage with MERS - 4/96                                    0086264470

VMP-4N(IL) (0109)          Amended 2/01

Page 1 of 8     92643415     Initials: _ABD_ _Q.D._

VMP MORTGAGE FORMS - (800)521-7291



of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Cook                                                                                                                  County, Illinois:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID #: 13-10-309-019-0000
which has the address of 4909 N Kruger Ave                                                                          [Street]
Chicago                                                     [City], Illinois 60630            [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

92643415                                                                                                      Initials: *AHD  Q.Q.*

-4N(IL) (0109)                                                   Page 2 of 8

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

92643415

-4N(IL) (0109)

Page 4 of 8

Initials: _AHD_ _O.D._

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

92643415
**VMP** **-4N(IL)** (0109)

Page 6 of 8

Initials: AHD ~D. K.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

92643415
-4N(IL) (0109)

Page 7 of 8

Initials: AHD · IO.IO.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _Ansarullah Habeebullah S Dawoudi_ (Seal)
                                      Ansarullah Habeebullah S Dawoudi  -Borrower

_____     _Daphne Dawoudi_ (Seal)
                                                                       -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                            -Borrower

STATE OF ILLINOIS,                              Cook   County ss:
    I, Bruce Fluxgold                   , a Notary Public in and for said county and state do hereby certify
that
Ansarullah Habeebullah S Dawoudi   and Daphne Dawoudi

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

    Given under my hand and official seal, this 21st day of December, 2012 .

My Commission Expires: 8-4-13

                                        _____
                                        Notary Public

"OFFICIAL SEAL"
BRUCE FLUXGOLD
Notary Public, State of Illinois
My Commission Expires 08-04-2013

92643415

VMP-4N(IL) (0109)        Page 8 of 8

Carrington Title Partners, LLC
1919 S. Highland Ave., Building B, Suite 315
Lombard, IL 60148
A Policy Issuing Agent for
Fidelity National Title Insurance Company

**LEGAL DESCRIPTION**

LOT 83 IN HIGG'S SUBDIVISION OF LOT 8 AND PART OF LOT 7, IN J.H. REE'S SUBDIVISION OF THE
SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY, ILLINOIS, SITUATED IN COOK COUNTY, ILLINOIS.

Commonly known as:  4909 North Kruger Avenue;  Chicago, IL 60630
PIN Number:  13-10-309-019

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANSARULLAH & DAPHNE DAWOUDI,<br>on behalf of themselves and a class,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   Case No. 16-cv-2356<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiffs Ansarullah and Daphne Dawoudi bring this action to secure redress from unlawful collection practices engaged in by defendant Nationstar Mortgage, LLC ("Nationstar"). Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

### VENUE AND JURISDICTION

2.     This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.     Venue and personal jurisdiction in this District are proper because:

     a.     Defendant's collection communications were received by plaintiffs within this District;

     b.     Defendant does or transacts business within this District.

### PARTIES

4.     Plaintiffs Ansarullah and Daphne Dawoudi are individuals who reside in the Northern District of Illinois, in a single family home which they own.

5.     Defendant Nationstar is a Delaware limited liability company with principal offices at 8950 Cypress Waters Boulevard, Coppell, Texas 75019. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive,

Springfield, Illinois 62703.

     6.     Nationstar states on its web site

(http//:nationstarholdings.com/services/servicing):

Servicing

One of the largest independent servicers ; diverse capabilities include all investor and loan types.

Nationstar offers residential mortgage investors a better alternative to servicing credit-sensitive assets in today's highly volatile economic and regulatory climate. Using a proven high-touch servicing approach, Nationstar has helped our servicing clients significantly reduce credit losses and improve asset performance.

     7.     The same web site also states: "Our Nationstar and Champion brands together comprise the 4th largest residential mortgage servicing platform providing services to over 2 million customers with an outstanding principal balance in excess of $390 billion..."

     8.     Nationstar holds itself out as a "special servicer." (Appendix A) A "special servicer" is one that services delinquent loans.

     9.     Many of the loans that Nationstar services, including plaintiffs', are delinquent when Nationstar first becomes involved with them.

     10.     Nationstar uses the mails and telephone system in conducting its business as described above.

     11.     Nationstar is a debt collector as defined in the FDCPA.

## FACTS

     12.     Defendant has been attempting to collect from plaintiffs an alleged residential mortgage loan debt incurred for personal, family or household purposes (housing).

     13.     The loan is a Federal Housing Authority ("FHA") insured loan.

     14.     Plaintiffs encountered financial hardship and fell behind on their mortgage payments.

     15.     Servicing of the loan was transferred to Nationstar in November 2014. (Appendix B)

2

16.     On December 1, 2014, Nationstar sent a letter to plaintiffs (Appendix C) stating that the loan was delinquent since October 2014.

17.     On or about November 16, 2015, defendant filed a foreclosure action against plaintiffs in Cook County, Illinois. (Appendix D)

18.     The Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1504, provides a form for foreclosure complaints, sometimes referred to as the "statutory short form" or "short form."

19.     The statutory short form includes a paragraph for "Names of defendants claimed to be personally liable for deficiency, if any:"

20.     The foreclosure complaint form was filled in, consistent with the short form, to state: "Names of defendants claimed to be personally liable for deficiency, if any: Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi."

21.     The Foreclosure Law provides, 735 ILCS 5/15-1504(f), that such statement in the form shall be deemed to be an allegation as follows: "Request for Deficiency Judgment. A request for a personal judgment for a deficiency in a foreclosure complaint if the sale of the mortgaged real estate fails to produce a sufficient amount to pay the amount found due, the plaintiff may have a personal judgment against any party in the foreclosure indicated as being personally liable therefor and the enforcement thereof be had as provided by law."

22.     The statutory short form does not require or encourage representing that a deficiency will be sought if a deficiency will not be sought or is not legally available. *Palatine Sav. and Loan Ass'n v. National Bank & Trust Co. of Sycamore*, 80 Ill.App.3d 437, 399 N.E.2d 1015 (2d Dist. 1980).

23.     In fact, the FHA narrowly limits the circumstances under which a deficiency will be sought to cases where the borrower committed fraud or engaged in a "strategic" default. The FHA does not authorize deficiencies where, as here, plaintiffs suffered a financial emergency or hardship.

24.     Pertinent FHA/ HUD policy statements are attached as Appendices E-F.

3

25. During the last three years, the number of instances in which FHA/ HUD has found that pursuit of a personal deficiency judgment against an Illinois homeowner is appropriate under its policies is zero (0).

26. A letter of October 28, 2015 from FHA/ HUD (<u>Appendix G</u>) states:

> There have been zero foreclosed FHA loans in Illinois in which the pursuit of a deficiency judgment was authorized. FHA is not currently pursuing deficiency judgments. HUD published its Final Rule on deficiency judgments in the Federal Register on February 16, 1988, (at 53 FR 4384). The Rule, which appears in the Code of Federal Regulations at 24 CFR 203.369, went into effect March 28, 1988. Mortgage Letter 2008-43, issued December 24, 2008, reminded Mortgagees that if a foreclosure occurs after the mortgagor unsuccessfully participated in the Pre-Foreclosure Sale process in good faith, neither the mortgagee nor HUD will pursue the mortgagor for a deficiency judgment. Mortgagee Letter 2014-24, issued November 26, 2014, discussed the use of FHA's Claims without Conveyance of Title (CWCOT) procedures.

> After weighing the significant anticipated costs and limited potential benefits, the Department has determined it is not the best interests of FHA to routinely seek deficiency judgments in connection with CWCOT claims. Therefore, FHA is not requesting that the mortgagees pursue any deficiency judgments in connection with CWCOT claims, unless FHA makes a special request pursuant to 24 CFR 203.369. . . .

27. Defendant, which regularly enforces FHA mortgage loans, knows or should know that there is essentially zero likelihood that a personal deficiency will be authorized to be sought on an FHA loan.

28. The statutory complaint form may be, and commonly is, filled out to state that a deficiency will not be sought (e.g., if the transaction is non-recourse, such as a reverse mortgage, or if the homeowner has discharged the debt in bankruptcy) or that a deficiency will be sought only in specified circumstances, as appropriate. (<u>Appendix H</u>)

29. By representing that a deficiency judgment will be sought if the sale of the property does not satisfy the debt, when it is virtually certain under FHA regulations and policies that no deficiency will be authorized to be sought on an FHA loan, defendant:

    a.     Falsely represents the character, amount and legal status of the debt,

    b.     Represents that nonpayment of the debt will result in personal liability when such action is not lawful and intended to be taken,

    c.     Threatens to take action that cannot legally be taken or that is not intended

4

to be taken,

d.  Uses false representation or deceptive means to collect or attempt to

collect any debt, and

e.  Threatens collection of amounts in contravention of law.

30.  Defendant also fails to state material facts necessary to avoid misleading the

consumer.

31.  The misrepresentation/omission is highly material because a homeowner:

a.  May file bankruptcy or take other action to resolve feared personal

liability in the belief that a personal deficiency may be sought when this is

not the case,

b.  May abandon the property when not legally required to do so,

c.  May fail or decline to pursue or assert defenses, or retain counsel to

contest the foreclosure proceeding,

d.  Is at a disadvantage in negotiating with defendant if the homeowner

believes that he or she is liable for a personal deficiency when that is not

the case, and

e.  Will not provide information to FHA as to why a deficiency is

inappropriate.

32.  Many homeowners facing foreclosure are unrepresented and will take the threat

of a deficiency at face value.

33.  Additionally, the homeowner has the right to provide exculpatory information in

the rare event that FHA believes a deficiency should be pursued.

## COUNT I – FDCPA

34.  Plaintiffs incorporate paragraphs 1-33.

35.  Defendant violated 15 U.S.C. §§1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10),

1692f and 1692f(1) through the representations and omissions described above.  Requesting

5

amounts prohibited by law violates the FDCPA. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) (debt collector violated FDCPA by requesting attorney's fees in its state court collection complaint without an agreement or statute authorizing it to do so); *Foster v. DBS Collection Agency*, 463 F.Supp.2d 783, 802 (S.D.Ohio 2006) (holding debt collector violated 15 U.S.C. § 1692(e)(2)(B) by seeking attorney fees not allowed by Ohio law); *Strange v. Wexler*, 796 F.Supp. 1117, 1118 (N.D.Ill.1992) (filing complaint requesting attorney fees not allowed by law violates 15 U.S.C. § 1692(e)(2)(B)).

36.     Section 1692e provides:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of--**

　　　　**(A) the character, amount, or legal status of any debt; . . .**

**(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

37.     Section 1692f provides:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . .**

## CLASS ALLEGATIONS

38.     This action is brought on behalf of a class, pursuant to Fed. R. Civ.P. 23(a) and (b)(3).

6

39.     The class consists of (a) all persons (b) sued by defendant to foreclose a residential mortgage (c) insured by the FHA (d) on a one or two family property (including condominiums and cooperatives) (e) where a complaint (original or amended) was filed or served during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action, (f) the complaint referred to a deficiency judgment against one or more borrowers, and (g) the loan was delinquent when Nationstar first acquired servicing or ownership.

40.     The class is so numerous that joinder is impracticable. On information and belief, there are in excess of 50 class members. This case concerns a standard form used in connection with the foreclosure of FHA-insured loans.  According to Nationstar's website (http//:nationstarholdings.com/services/servicing): "Our Nationstar and Champion brands together comprise the 4th largest residential mortgage servicing platform providing services to over 2 million customers with an outstanding principal balance in excess of $390 billion..." Approximating 15% of all mortgages are FHA-insured mortgages. (Appendix I). It is therefore reasonable to infer that defendants have filed numerous foreclosure complaints using the standard form and representing that a deficiency judgment would be sought if the sale of the property did not satisfy the debt and that many of those complaints involved FHA-insured loans. Accordingly, it can reasonably be inferred that the numerosity requirement is satisfied.

41.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The predominant common questions are:

    a.     What the FHA's practices are with respect to authorizing a deficiency judgment;

    b.     Whether defendant misrepresents that borrowers will be held liable for a deficiency when they will not be;

    c.     Whether defendant fails to disclose material information about the

7

likelihood of a deficiency.

42.  Plaintiffs' claims are typical of the claims of the class members. All are based on the same legal and factual issues.

43.  Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have retained counsel experienced in the prosecution of consumer credit claims and class actions.

44.  A class action is superior for the fair and efficient prosecution of this litigation, in that:

    a.   Individual litigation is not economically feasible.

    b.   Classwide liability is essential to cause defendant to stop its improper conduct.

    c.   Many class members may be unaware that they have been victims of illegal conduct.

    d.   Class actions were intended by Congress as a principal means of enforcing the FDCPA.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and in favor of the class and against defendant for:

    i.   Statutory damages;

    ii.   Attorney's fees, litigation expenses and costs of suit;

    iii.   Such other or further relief as is appropriate.

          s/Daniel A. Edelman
          Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle A. Alyea
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824

8

(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

Christopher Kruger
Werner Gruber
KRUGER & GRUBER, LLP
500 N. Michigan Ave. Suite 600
Chicago, Illinois 60611
(773) 663-4949
(312) 268-7064 (FAX)
Email: chris@krugerandgruber.com
http://www.krugerandgruber.com

T:\32274\Pleading\Complaint MAA_Pleading.wpd

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


s/Daniel A. Edelman
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/Daniel A. Edelman
Daniel A. Edelman

# APPENDIX A

1/25/2016    Nationstar Special Servicing | Mortgage Special Servicing, Subservicing, High Risk Mortgage Servicing, Loss Recovery for FHA, VA, Fannie Mae, Fred...

 | SPECIAL SERVICING

Helping You Achieve More®

Why Nationstar?    About Us    Our Services    Origination Options    Contact Us    Client Resources

## Why Nationstar Mortgage?

Because we deliver the results that Investors want from a Special Servicer. By outperforming other Special Servicers across key industry benchmarks, we are the fastest growing top-50 servicer in the U.S. since 2007.



1  2  3  4

**We offer everything investors want in a special servicer.**

Nationstar Mortgage is one of the largest independent loan servicers in the U.S. with a servicing portfolio in excess of $391 billion (as of December 31, 2013). With a proven 13-year track record and leadership averaging 23+ years experience, Nationstar has become the preferred choice for a wide range of investors.

**Read More**

**Fully integrated special servicing and originations platform or originations only - you choose.**

We are one of only a few high-touch servicers in the United States with a loan origination platform. We are licensed to originate mortgage loans in all 50 states and offer both government (FHA and VA) and conventional (Fannie Mae and Freddie Mac) loans.

**Read More**

**Leverage our leading technology to stay on the cutting edge of special servicing.**

Nationstar Mortgage's technology enables us to achieve superior results for our company and our clients. Our state-of-the-art proprietary default management system incorporates sophisticated models and NPV analysis to provide optimal loss mitigation solutions.

**Read More**

---

Home | Why Nationstar? | About Us | Our Services | Origination Options | Contact Us | Client Resources

Copyright © 2015 Nationstar Mortgage Holdings, Inc.   All rights reserved.   NMLS #2119
This website is not authorized by the State of New York.

Terms of Use | Legal | Privacy



# APPENDIX B

(Page 1 of 3)



November 17, 2014

RETURN SERVICE REPRESENTATION OF PRINTED DOCUMENT
PLEASE DO NOT SEND MAIL
TO THIS ADDRESS
P.O. 619063
DALLAS, TX 75261-9063
MyNationstar.com

The servicing of your account
has been transferred from LOANCARE to
Nationstar Mortgage

**Copy**

ANSARULLAH HABEEBULLAH DAWOUDI

Your old LOANCARE account number:
███████8297

<u>Your new Nationstar account number:</u> ███████8402

Principal Balance: $141,385.67
Escrow Balance: $299.34

Dear ANSARULLAH HABEEBULLAH DAWOUDI:

**Why am I receiving this letter?**

Welcome to Nationstar! As of 11/04/14, LOANCARE has transferred the servicing of your mortgage loan to Nationstar Mortgage. Please take a moment to read through this packet to learn more about Nationstar and the transfer of your loan.

**What does this mean for me?**

Nationstar's goal is to make the transfer process easy and seamless. Your next billing statement will come from Nationstar, and your next payment should be made to Nationstar. If you have already sent a payment to LOANCARE, they will forward it to us, and we will credit your account. You will not be charged a late fee for any on-time payments sent to LOANCARE for 60 days following the transfer date of your loan.

At Nationstar, it is our goal to provide you with outstanding customer service. To help ensure we can do so, we ask that you complete these 3 simple steps:

**What do I need to do?**

1. Register online at <u>MyNationstar.com/Welcome.</u> Your online account makes it easy to set up recurring monthly drafts with AutoPay and make one-time online payments. You can also view your current balance, payments due, escrow information, year-end tax documents and more.

2. Verify your contact information online.
   Primary Phone: ███████████  Email Address:
   Work Phone: ███████████

   This information can be updated by signing in at <u>MyNationstar.com.</u>

3. Make sure you switch your payments to Nationstar. Sign up for AutoPay for a monthly recurring automatic draft, update the payee information and loan number for your bank's bill pay program or mail in the slip below with your payment. If you were enrolled in a monthly automatic draft program with LOANCARE, please see the following pages for important information regarding this service. See all your easy payment options at <u>MyNationstar.com.</u>

You're all set!

**What if I have questions?**

Please review the Important Messages Specific To Your Account, including the Validation of Debt Notice, and other additional information included in this Welcome Packet.

Please be sure to read through the enclosed materials. These should answer any questions you may have, but if you have a question that we haven't addressed in this packet or online your Dedicated Loan Specialist is Liliana Sanchez and can be reached at (877) 783-7491 EXT. 8941032 or via mail at 350 Highland Drive, Lewisville, TX 75067.

We look forward to serving you!

Sincerely,

Nationstar Mortgage LLC
NMLS #2119

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.                POWLETA04

Nationstar
MORTGAGE
MyNationstar.com

☐ PLEASE CHECK BOX IF MAILING ADDRESS
OR PHONE NUMBER HAS CHANGED
ENTER CHANGES ON BACK OF COUPON

| LOAN NUMBER | TOTAL AMOUNT DUE | |
|---|---|---|
| ███████8402 | $3,863.44 | 11/01/2014 |
| WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO NATIONSTAR MORTGAGE | LATE PAYMENT IF RECEIVED ON OR AFTER | 11/17/2014 |

| ADDITIONAL PRINCIPAL | |
|---|---|
| TOTAL AMOUNT OF YOUR CHECK DO NOT SEND CASH | $ |

NATIONSTAR MORTGAGE
PO BOX 650783
DALLAS, TX 75265-0783
ᴵᴵᵘᵗᵇᴵᴵᵗᵘᵈᵗᴵᴵᵗᵘᴵᴵᵘᵈᵗᴵᴵᵗᵘᴵᴵᵘᵗᵘᵈᴵᴵᵘᵈᵗᵘᴵᴵᵈᵘᵗᴵᵗᴵ

INTERNET REPRINT

(Page 2 of 3)

REPRESENTATION OF PRINTED DOCUMENT                                       **Copy**

## Important Account Information

**Automatic Drafts**

If your loan was on an automatic payment plan, that service is being canceled by your prior servicer. We are pleased to offer you the opportunity to enroll in this service through Nationstar. You can do so by accessing your account at MyNationstar.com. For your convenience, we have enclosed instructions that will take you through this easy set up process.

**Escrow Account**

Our records indicate that you have an escrow account for taxes and/or insurance. Your payment amount includes your tax and/or insurance escrow payment.

**Account Status**

Our records indicate you might be having trouble making your payment. Please call us immediately at (877) 783-7491 so we can find a solution that meets your needs. If you are in the process of applying for or providing information related to a workout (including modifications) with LOANCARE, we anticipate that your information will soon be transferred to Nationstar Mortgage, but feel free to contact us to verify we have what we need to move forward.

**VALIDATION OF DEBT NOTICE**

We look forward to servicing your loan on behalf of GINNIE MAE II MBS POOL #36733.

- Your total debt as of 11/04/14 is $142,912.82. This amount includes your outstanding Unpaid Principal Balance of $141,395.67, $1,426.55 in Interest, $50.80 from Fees, $0.00 from Escrow Advances, $40.00 from expenses paid on your behalf and a credit of $0.00 for partial payment amounts. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. For further information, write the undersigned or call (877) 783-7491.

- The creditor to whom the debt is owed is GINNIE MAE II MBS POOL #36733, but the debt is being serviced by Nationstar.

- Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by Nationstar.

- If you notify Nationstar in writing within this thirty (30) day period that the debt, or any portion thereof, is disputed, Nationstar will obtain verification of the debt and a copy of such verification will be mailed to you.

- Upon your written request within the thirty (30) day period, Nationstar will provide you with the name and address of the original creditor, if different from the current creditor.

Mail written disputes to:
Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

*PLEASE NOTE: If you are a customer in a bankruptcy or if you have received a bankruptcy discharge of this debt, please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.*

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.*

**Partial Payments Policy**

Nationstar Mortgage would like to take this opportunity to inform you of our partial payments policy. Nationstar Mortgage accepts partial payments until the account becomes delinquent. When accepting partial payments, Nationstar Mortgage may place funds that are less than a full payment in a suspense account. These unapplied funds may remain in suspense until the remainder necessary to complete the payment is received. These funds can still be used towards future payments. However while the funds are in suspense, they may not prevent your account from accruing late fees or being reported as delinquent to credit bureaus where permitted under applicable law.

In the event an account becomes delinquent, Nationstar Mortgage may limit the form and amount of payment that will be accepted.

**Welcome Packet - Enclosures**

There is additional information provided in this packet. Please keep this information with your loan documents for future reference.

(Page 3 of 3)



REPRESENTATION OF PRINTED DOCUMENT
PLEASE DO NOT SEND MAIL
TO THIS ADDRESS
P.O. 619053
DALLAS, TX 75281-9053

**Copy**

November 17, 2014

▮▮▮▮▮▮▮

ANSARULLAH HABEEBULLAH DAWOUDI

▮▮▮▮▮▮▮▮▮

New Nationstar Loan Number: ▮▮▮8402

## NOTICE OF SERVICING TRANSFER

Dear ANSARULLAH HABEEBULLAH DAWOUDI:

The servicing of your mortgage loan is being transferred, effective 11/04/14. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

LOANCARE is now collecting your payments. LOANCARE will stop accepting payments received from you after 11/04/14.

Nationstar Mortgage will collect your payments going forward and will begin accepting payments received from you on 11/04/14.

Send all payments due on or after 11/04/14 to Nationstar Mortgage at this address:

**P.O. Box 650783**
**Dallas, TX 75265-0783**

If you have any questions for either your present servicer, LOANCARE or your new servicer, Nationstar Mortgage, about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:
LOANCARE
(800) 274-6600
P.O. Box 8068
Virginia Beach, VA 23450

New Servicer:
Nationstar Mortgage
Account Resolutions
(877) 783-7491
350 Highland Drive
Lewisville, TX 75067

Your mortgage life insurance, disability insurance and/or other optional insurance products and services will not transfer to Nationstar. If you wish to retain these policies, you should contact your current optional insurance carrier or service provider.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Sincerely,

Nationstar Mortgage LLC

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.



# <u>APPENDIX C</u>

(Page 3 of 6)

Copy



12/01/2014

Sent Via Certified Mail
9314 7100 1170 0779 9477 24

ANSARULLAH HABEEBULLAH S DAWOUDI
TANYA M SMITH



Loan Number: 8402
Property Address:

Dear ANSARULLAH HABEEBULLAH S DAWOUDI and TANYA M SMITH:

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT NATIONSTAR MORTGAGE LLC ("NATIONSTAR") IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY TO THE EXTENT THAT IT IS INCLUDED IN YOUR BANKRUPTCY OR HAS BEEN DISCHARGED, BUT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.**

If you are represented by an attorney, please send this notice to your attorney.

Nationstar is the mortgage loan servicer for "Government National Mortgage Association".

This notice is being sent as required by the terms of the security instrument securing your mortgage loan.

You have not made payments on your loan since 10/01/2014. You are now due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan.

As of the date of this letter, total monthly payments (including principal, interest, and escrow, if applicable), late fees, NSF fees, and other fees and advances due under the terms of the loan documents are past due in the amount of $2,598.46. In order to cure this default, you must pay the total amount due of $2,598.46 in addition to other amounts that become due from the date of this letter through the date you pay.

On the day that you intend to pay, please call Nationstar at 1-888-480-2432 to request the full amount owed on your account as the amount due on the day that you pay may be greater than stated above, due to interest, late charges, and other charges or credits that may vary from day to day, or may be assessed after the date of this letter. Any advances made by Nationstar subsequent to the date of this letter to protect the lien position and property must be added to the total amount necessary to cure the default. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

All reinstatement payments must be made payable in **certified funds, cashier's check or money order(s)** and mailed to **Nationstar Mortgage LLC, 350 Highland Drive, Lewisville, TX 75067-4177.** You may call Nationstar at 1-888-480-2432 if you have questions regarding your account or write to Nationstar Mortgage

GEN_FP_NOI
Page 1 of 3

9314 7100 1170 0779 9477 24

(Page 4 of 6)

Copy

LLC, 350 Highland Drive, Lewisville, TX 75067-4177.

Unless otherwise required by applicable law, Nationstar is not obligated to accept less than the full amount owed. If you send less than the full amount owed, Nationstar may, in its sole discretion, apply such partial payment without waiving any default or waiving the right to accelerate the mortgage and pursue foreclosure.

**$2,598.46** must be paid by **01/05/2015** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default.

Your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of the Note, the next payment due on 01/01/2015 is still due on 01/01/2015 (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). Please be further advised that from this time forward, strict compliance with the exact terms of the loan documentation will be required pursuant to O.C.G.A. § 13-4-4.

Failure to pay **$2,598.46** by **01/05/2015** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property.

In the event of acceleration, you have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of borrower to acceleration and foreclosure.

This default, and any legal action that may occur as a result, may be reported to one or more local and national credit reporting agencies by Nationstar.

If you request in writing, Nationstar will not contact you by phone at your place of employment. Furthermore, if you request in writing not to be contacted, Nationstar will not contact you, except to send statutorily and/or contractually required legal notice(s).

You may have options available to you to help you avoid foreclosure. Please call Nationstar's Foreclosure Prevention Department at 1-888-480-2432 for additional information or to request an interview for the purpose of resolving the past due account. You may also visit https://www.nationstarmtg.com/PaymentAssistance/ for additional information, to see what options may be available to you, and to submit an application for assistance.

All homeowners are eligible for housing counseling services through the U.S. Department of Housing and Urban Development (HUD). To obtain a list of HUD approved counseling agencies, call 1-888-995-HOPE (4673) or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Attention Servicemembers and Dependents**: Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure without a court order. If you are currently in the military service, or have been within the last 12 months, AND joined after signing the Note and Security Instrument now in default, please notify Nationstar immediately. When contacting Nationstar as to your military service, you may be required to provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil or 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified counseling agencies (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also call Nationstar toll-free at 1-888-480-2432 if you have questions about your rights under SCRA.

9314 7100 1170 0779 9477 24

(Page 5 of 6)

Copy

Please disregard this notice if a payment sufficient to cure the default has already been sent.

Sincerely,

Liliana Sanchez
Dedicated Loan Specialist
Nationstar Mortgage LLC
1-877-783-7491 ext. 8941032
350 Highland Drive
Lewisville, TX 75067-4177



GEN_FP_NO1
Page 3 of 3

9314 7100 1170 0779 9477 24

# APPENDIX D

Cook County #21762

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

Nationstar Mortgage LLC

PLAINTIFF

Vs.

Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S.
Dawoudi; Daphne Dawoudi; Unknown Owners and
Nonrecord Claimants

DEFENDANTS

2015CH16790
CALENDAR/ROOM 59
No. TIME 00:00
Owner Occupied



## COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, NATIONSTAR MORTGAGE LLC, by and through its attorneys,
CODILIS & ASSOCIATES, P.C., complaining of the defendants herein and, pursuant to 735 ILCS
5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the
nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons
identified in the above caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a copy of the Mortgage. Attached as "EXHIBIT B" is a copy of the
Note.

3. Information concerning said Mortgage:

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 12/21/2012

    (C) Name of mortgagor(s):

        Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi

    (D) Name of the original mortgagee:

        Mortgage Electronic Registration Systems, Inc. as Nominee for Freedom Mortgage
        Corporation

    (E) Date and Place of Recording or Registering:

        1/8/2013
        Office of the Recorder of Deeds of Cook County Illinois

    (F) Identification of Recording: Document No. 1300857517

**Page 1 of 4**

(G)  Interest subject to the mortgage: Fee Simple.

(H)  Amount of original indebtedness:  

    (1) Original Indebtedness: $T45,874.00

(I)  Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 83 IN HIGG'S SUBDIVISION OF LOT 8 AND PART OF LOT 7, IN J.H. REE'S SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY ILLINOIS, SITUATED IN COOK COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:** ███████████

**TAX PARCEL NUMBER:** ███████████

(J)  Statement as to defaults: Mortgagors have not paid the monthly installments of Principal, taxes, Interest and insurance for 02/01/2015, through the present; the Principal balance due on the Note and the Mortgage is $140,175.39, plus Interest, costs, advances and fees. Interest accrues  pursuant to the Note, and the current per diem is $13.63.

(K)  Name of present owner(s) of said premises:
    Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi

(L)  Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

Daphne Dawoudi, by virtue of the fact that, upon information and belief, he/she is in possession of the subject real estate and may have some interest therein;  Plaintiff alleges that the interest of Daphne Dawoudi is subordinate and inferior to the lien of its mortgage.

(M)  Names of defendants claimed to be personally liable for deficiency, if any:

Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi.

(N)  Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208.

(O)  Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons

**Page 2 of 4**

or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P)  Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q)  Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default under the mortgage.

(R)  Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

(S)  Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T)  Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi; Daphne Dawoudi

4.  Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

### REQUEST FOR RELIEF

**WHEREFORE, THE PLAINTIFF REQUESTS:**

1.  A judgment of foreclosure and sale.

2.  An order granting a shortened redemption period, if sought.

3.  A personal judgment for deficiency, if applicable and sought, and only against parties who have signed the Note or monetary obligation which is the subject matter of this complaint, or persons who have assumed liability of the Note or monetary obligation which is the subject matter of this complaint, and who have not received a Chapter 7 bankruptcy discharge and who are not personally protected by the automatic stay at sale confirmation.

4.  An order granting possession, if sought.

5.  An order placing the mortgagee in possession or appointing a receiver, if sought.

6.  A judgment for attorneys' fees, costs and expenses, if sought.

7.  For the appointment of a Selling Officer, if deemed appropriate by this court.

8.  Such other and further relief as this court deems just.


Nationstar Mortgage LLC

BY:

CODILIS & ASSOCIATES, P.C.
One of its Attorneys

Johnny Frevert
ARDC # 6305960


Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
14-15-07914

PERSONAL INFORMATION REDACTED

# Exhibit A

Illinois Anti-Predatory
Lending Database
Program

Certificate of Compliance

Mail To: 1g /
Carrington Title Partners, LLC
1919 S. Highland Ave., Ste 315-B
Lombard, IL 60148
(630)317-0049

2012 - 0429408

Report Mortgage Fraud
800-532-8785

Doc#: 1300857517 Fee: $56.00
Karen A. Yarbrough RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/08/2013 12:27 PM Pg: 1 of 10

The property identified as:    PIN: 13-10-309-019-0000

Address:
Street:
Street line 2:
City:                State:  IL            ZIP Code:

Lender:  Freedom Mortgage Corporation

Borrower:  Ansarullah Habeebullah S. Dawoudi

Loan / Mortgage Amount: $145,874.00

Pursuant to 765 ILCS 77/70 et seq., this Certificate authorizes the County Recorder of Deeds to record a residential
mortgage secured by this property and, if applicable, a simultaneously dated HELOC.

Certificate number:  6C85CA4B-F4B2-4DAB-9DA3-1F8968520F12        Execution date:  12/21/2012

1300857517 Page: 2 of 10

~~Return To:~~
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001
Prepared By:

STEPHANIE SOURAPAS

State of Illinois                    **MORTGAGE**          | FHA Case No.
                                                          ████████████

                                              MIN ████████████

THIS MORTGAGE ("Security Instrument") is given on  December 21, 2012
The Mortgagor is Ansarullah Habeebullah S Dawoudi, a married person.

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.  Freedom Mortgage Corporation

("Lender") is organized and existing under the laws of The State of New Jersey                , and
has an address of 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ  08054
                                          . Borrower owes Lender the principal sum of
One Hundred Forty Five Thousand Eight Hundred Seventy Four and 00/100
                                          Dollars (U.S. $145,874.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2043
                  . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Illinois Mortgage with MERS - 4/96
4N(IL) (0109)            Amended 2/01
Page 1 of 8                    Initials: HHD - D.D.
VMP MORTGAGE FORMS - (800)521-7291

1300657517 Page: 3 of 10

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Cook County, Illinois:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID #: ▮▮▮▮▮▮▮▮
which has the address of ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ [City], Illinois ▮▮▮▮ [Zip Code] ("Property Address"); [Street]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Initials: *AHD  Q.Q.*

4N(IL) (0109)    Page 2 of 8

1300857517 Page: 4 of 10

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or



Page 3 of 8

Initials: AHD - Q.Q

1300857517 Page: 5 of 10

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:



Page 4 of 8

Initials: AHD - D.D.

1300857517 Page: 8 of 10

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



Page 8 of 8

Initials: A.H.D. - D.R.

1300857517 Page: 7 of 10

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.



Page 5 of 8

Initials: *AHD* ~ *D.R*

1300857517 Page: 8 of 10

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Growing Equity Rider     ☐ Other [specify]
☐ Planned Unit Development Rider     ☐ Graduated Payment Rider

Page 7 of 8

Initials: _AHD_ · _D.D._

1300657517 Page: 9 of 10

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _Ansarullah Habeebullah Dawoudi_ (Seal)
                                        Ansarullah Habeebullah S Dawoudi  -Borrower

_____     _Daphne Dawoudi_ (Seal)
                                                            -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                             -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                             -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                             -Borrower

STATE OF ILLINOIS,                              Cook      County ss:
   I, Bruce Fluxgold              , a Notary Public in and for said county and state do hereby certify that
Ansarullah Habeebullah S Dawoudi  and Daphne Dawoudi

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.
   Given under my hand and official seal, this 21st day of December, 2012.

My Commission Expires: 8-4-13

                                         _____
                                         Notary Public

"OFFICIAL SEAL"
BRUCE FLUXGOLD
Notary Public, State of Illinois
My Commission Expires 08-04-2013

-6AN(IL) (0109)              Page 8 of 8

1300857517 Page: 10 of 10

Carrington Title Partners, LLC
1919 S. Highland Ave., Building B, Suite 315
Lombard, IL  60148
A Policy Issuing Agent for
Fidelity National Title Insurance Company

**LEGAL DESCRIPTION**

LOT 83 IN HIGG'S SUBDIVISION OF LOT 8 AND PART OF LOT 7, IN J.H. REE'S SUBDIVISION OF THE
SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY, ILLINOIS, SITUATED IN COOK COUNTY, ILLINOIS.

Commonly known as: ████████████████████████
PIN Number: ████████████

PERSONAL INFORMATION REDACTED

MIN
MERS Telephone



# NOTE

**Multistate**

December 21, 2012
*[Date]*

FHA Case No. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮
*[Property Address]*

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Freedom Mortgage Corporation

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Forty Five Thousand Eight Hundred Seventy Four and 00/100
Dollars (U.S. $145,874.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of
Three and One-Half
percent (       3.500 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on February 1, 2013. Any principal and interest remaining on the first day of January, 2043    , will be due on that date, which is called the "Maturity Date."
**(B) Place**
Payment shall be made at P.O. Box 8068, Virginia Beach, VA  23450-8068
or at such place as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $      655.04       . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

▮▮▮▮▮▮ se Note                                                                          ▮▮▮▮▮▮
VMP ®                                                                                         VMP1R (1101).00
Wolters Kluwer Financial Services                                                            Page 1 of 3
10/95

5. **BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**

(A) **Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths

percent ( 4.000 %) of the overdue amount of each payment.

(B) **Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Multistate FHA Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

0F86
VMP1R (1103).00
Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)       _____ (Seal)
Ansarullah Habeebullah S Dawoudi   -Borrower                  -Borrower

_____ (Seal)       _____ (Seal)
                         -Borrower                  -Borrower

*[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Pay to the order of

without recourse this _____ day of _____ 20___
Freedom Mortgage Corporation

Stanley C. Middleman
President/Chief Executive Officer

# APPENDIX E

U.S. Department of Housing and Urban Development
H O U S I N G

---

Special Attention of:                    Notice   H 94-89 (HUD)
All Secretary's Representatives
All State Coordinators
All Area Coordinators                    Issued:  November 7, 1994
All Housing Directors
All Directors of Single Family Housing   Expires: November 30, 1995
All Chief Property Officers
All Chiefs of Loan Management            Cross References:
All Single Family Supervisory Loan
  Specialists

---

Subject:   Reiteration of Department's Policies and Procedures
           Regarding Single Family Deficiency Judgments

The purpose of this Notice is to update the various local
offices regarding the Department's position on the pursuit and
collection of deficiency judgments ("DJs") affecting single family
mortgagors who have (or had) FHA-insured mortgage loans.  This
document is intended to clarify certain underlying policies and
issues, and will refer the reader to other sources of pertinent data.
However, it will also be necessary to turn to the appropriate
regulation, or to servicing or claims handbooks, for further
information.

A.The regulatory authority.

The two regulations that pertain to the pursuit and collection
of DJs, and to claims for FHA benefits arising from the pursuit of
DJs, are 24 CFR 203.369 and 203.402(o).  The first regulation, as
amended, enables the Department to require a mortgagee (through its
attorney, as necessary) to pursue diligently a deficiency judgment
"in connection with any foreclosure", of a mortgage insured on or
after March 28, 1988.  It also enables HUD to request a mortgagee to
pursue a deficiency judgment in connection with the foreclosure of a
mortgage insured prior to March 28, 1988.  All deficiency judgments
obtained must never be subject to collection by the mortgagee, and
must be assigned to the Department within 30 days, unless the
mortgagee decides to terminate the mortgage insurance and not to file
a claim for FHA benefits in that case.  In order to comply with the
request or requirement to pursue a deficiency judgment, the mortgagee
must follow the Claims Without Conveyance of Title procedures
outlined in 24 CFR 203.368(e), which will result in the mortgagee
receiving an instruction to bid a certain amount at the foreclosure
sale that will be less than the indebtedness on the mortgage note,
thus establishing the amount of the deficiency in that case.

The second regulation, 24 CFR 203.402(o), pertains to the
reimbursement in full of any additional amounts, beyond "regular"
foreclosure costs, expended by the mortgagee and made necessary by

---

R-3-1,R-3-2,R-3-3,R-6,R-6-2,R-7,R-8

Previous Editions Are Obsolete                                     HUD 21 B(3-80)
                                                   GPO 871 902

2

the Department's decision to require, request or approve the mortgagee's
decision to pursue a DJ against a defaulting mortgagor.  Ordinarily,
foreclosure-related expenses are reimbursed on the claim at a rate of
two-thirds; however, where the decision to pursue a DJ has resulted in, for
example, the need to carry out a "judicial" foreclosure in a state where
otherwise a less expensive "power-of-sale" procedure could have been used,
the mortgagee will be fully reimbursed for the cost of the judicial
foreclosure procedure.  NOTE:  Reimbursement of DJ expenses can occur only
through the claims process.  See Part E, Claims-related issues, on page 4
of this Notice.

B.Underlying policies regarding the pursuit of DJs.

   Deficiency judgments are seen by the Department as serving two major
functions.  The first is as a deterrent to abuse committed by mortgagors
whose default, and the subsequent foreclosure of their mortgages, resulted
from the decision to disregard their financial obligation.  These
mortgagors can be owner-occupants who "walk away" from their homes because
of declining values or for other reasons related to convenience (as opposed
to genuine hardship), or by investors who have made an economic decision
without regard to their financial obligations and a continued ability to
pay.  (The number of investors with Single Family mortgage loans has been
declining in recent years because of reforms that have eliminated them from
obtaining virtually all kinds of newly-originated loans, although some
older loans can still be assumed by non-occupant owners.)

   A second (and less critical) reason for pursuing mortgagors for DJs is
to generate revenue for the Department.  Of course, it will generally be
true that money must be expended by HUD, in the form of reimbursed legal
and other expenses, in order to generate revenue from mortgagors who become
judgment debtors.  However, it is possible that beginning the process of
pursuing a judgment, and informing the mortgagor of this fact, can
sometimes result in that mortgagor's willingness to pay all or some of the
estimated judgment prior to the matter becoming a matter of public and
judicial record.  This saves HUD the considerable cost of going through all
the legal channels that would otherwise be necessary.  (Detailed
information is contained in the Attachment regarding collection procedures,
entitled Single Family Deficiency Judgment Guidelines.)

C.Initiating the pursuit of a deficiency judgment.

   It is the Department's stated policy that HUD will pursue an
appropriate number of worst-case offenders for DJs, primarily as a means of
deterring similar abuse in the future.  Consequently, each HUD Office has
to determine periodically whether there is a significant problem in its
jurisdiction with mortgagors whose defaults are not caused by personal
hardship but rather are allowed to occur out of convenience.  For example,
such indicators as the

3

overall default and foreclosure rates climbing suddenly, or a weakening
economy giving rise to a significant increase in investor defaults, or
information being received that certain mortgagors are in the process of
"walking away" from their properties and financial obligations, should
alert the HUD staff to be more vigilant to the possibility of abuse and the
need for deterrence.  Another factor to consider at the time a decision is
made to target a mortgagor for a deficiency judgment (whenever such
information is known or can be obtained) is that the mortgagor would be in
possession of significant assets or income after foreclosure and thus be in
a position to pay all or part of a deficiency judgment within a reasonable
period of time.  Certainly, by the time collection begins, financial
statements and credit checks will be utilized.  There will be occasions,
however, when knowledge or a reasonable presumption will exist regarding
the presence of financial assets at the time a decision is being made to
pursue a DJ against a particular mortgagor.

   In addition, the PRINTLIST system provides a quarterly report on the
fifth working day of the month following the end of that quarter.  It is on
System 3 and is known as F42 KXCA, "Duplicate Mortgagors with 2 or More
Loans with 1 or More Currently in Default of Foreclosed."  Essentially, it
is a listing of those multiple-property owners who have 1 or more
FHA-insured mortgages in default or foreclosure status.  It is based on
SFDMS data submitted by the mortgagees, and on claims data.  It should be
used to select those mortgagors with the greatest number of loans in
default or foreclosure status for possible pursuit of deficiency judgments.
In those instances where other FHA-insured mortgages not in default appear
on the list, that information attests to the existence of financial assets
that could be used to pay the deficiency judgment resulting from the loans
in a defaulted status.

   As with all other PRINTLIST reports, this report remains on the system
for three working days, and can be requested for an additional thirty days
by calling the Headquarters User Assistance Branch at 202-708-3300.  To do
so, the complete file name of the report, the qualifier (PF 42) and the
first date that that particular quarterly report was available on the
system must be provided.  (This information can be found on PRINTLIST for
30 days after the report is first listed.)

   Valuable information may also be received from mortgagees or from
members of the public who may know the circumstances of particular
mortgagors who are in default or foreclosure.  Please note that all
decisions to pursue mortgagors for deficiency judgments must be documented
in the HUD office's DJ file.  Of course, arbitrary or capricious decisions
must be avoided.

   Any notification of the mortgagee that HUD is requiring or requesting
it to pursue a deficiency judgment must be in writing.  Mortgagees should
be referred to Paragraph 9-8 in Handbook 4330.1 REV-5, "Administration of
Insured Home Mortgages," for information on

                              4

judgment, including use of the appropriate form to request a property
appraisal and bidding instructions for the foreclosure sale.  Follow-ups by
HUD staff are strongly recommended to determine which cases are progressing
through the process.  (NOTE:  Deeds-in-lieu of foreclosure or
pre-foreclosure sales are not to be considered for those mortgagors who are

targeted for deficiency judgments.)

D.  Collection of Judgments Successfully Obtained; "Pre-Judgment"
    Negotiation and Collections.

   Attached please find a copy of a memorandum dated September 8, 1993
and entitled "Single Family Deficiency Judgment Guidelines." It was sent
to the attention of local HUD Office staff whose duties include Single
Family Deficiency Judgments. The memorandum describes the procedure to be
used by HUD offices to transmit the necessary materials, after a judgment
has been obtained or a pre-judgment settlement is entered into with a
mortgagor/debtor, to the appropriate Debt Management Center. It also
discusses the local Office's limited authority to consider "compromise
offers" from mortgagors prior to sending the package to the Debt Management
Center before the commencement of the standard collection procedures. The
contents of the memorandum remain in effect except for the discussion on
pages 4-5 pertaining to the issuance of form 1099-G for mortgagors that
enter into prejudgment settlements.

   Periodic inventory and collection reports generated by the Debt
Management Centers will be distributed to Field Offices and should be
examined by them for accuracy. Any omissions from or other inaccuracies in
these lists should be reported without delay to the Accounting Section of
the appropriate Debt Management Center.

E.Claims-related Issues.

   Handbook 4330.4 REV-1, "FHA Single Family Insurance Claims," contains
two chapters that are pertinent to the deficiency judgment process. They
are Chapter 6 (Claims Without Conveyance of Title) and Chapter 7
(Supplemental Claims/Remittance).

   Claim type 01 corresponds to conveyance claims, which will include
most claims involving deficiency judgments. Claim type 06 corresponds to
Claims Without Conveyance of Title (CWCOT), and applies only when a
property belonging to a mortgagor who was targeted for a deficiency
judgment is sold at foreclosure to a party other than the mortgagee, and
consequently, the property is not conveyed to HUD. (The fact that the
CWCOT procedure is used preliminarily whenever a DJ is sought, to obtain an
appraisal and establish the bid amount at the foreclosure sale, does not
define the type of claim that will be filed, because the property may or
may not be conveyed to the Department after foreclosure.)

   Only one supplemental claim should be filed for DJ costs on any
particular FHA case. Thus, a supplemental claim for DJ costs should

                              5

not be submitted until the pursuit of a deficiency judgment has reached a
point of resolution.

   Fees and costs are reimbursable only through the claims process and
only when HUD requested or required the deficiency judgment action or when
HUD has approved the mortgagee's request to pursue the DJ. As indicated
above, costs that are solely attributable to the pursuit of a deficiency
judgment are fully reimbursable. Allowable costs and fees are:  attorney
fees which relate only to the deficiency judgment; additional filing or

recording fees which relate only to the deficiency judgment; costs related to a judicial foreclosure if State law requires a judicial foreclosure in order to obtain a deficiency judgment and the foreclosure would otherwise be a less costly "power of sale."

F.   Periodic Reporting of Pertinent Data and Economic Trends/Conditions by Local HUD Offices to HQ.

   Local HUD Offices are hereby instructed to contact the Insured Servicing Branch in the Office of Insured Single Family Housing whenever trends or other facts surface that might lead to the conclusion that a rising incidence of "manufactured" defaults, fraud or other types of abuse of Single Family programs within their respective jurisdictions was resulting in a higher rate of defaults and foreclosures, that were not attributable to genuine hardships experienced by owner-occupant mortgagors. Economic cycles, recessions, plant and military base closings, etc. may cause circumstances beyond the control of some mortgagors, but may also induce other mortgagors to walk away from their obligations despite their continued ability to honor them.  In order to stem the tide of such opportunistic defaults, each local HUD Office must remain vigilant for signs of abuse, and should be prepared (where not pre-empted by State law) to pursue deficiency judgments against an appropriate number of such mortgagors.

   The Office of Insured Single Family Housing wishes to keep abreast of such trends and developments, so it is hereby instructing the Directors of Single Family Housing to conduct and document periodic investigations and analyses, at a minimum, on an annual basis commencing in January 1995. Information should be sought from the Property Disposition and Loan Management Branches and the Office Economist (if any) regarding the existence of economic trends or other developments that might signal the need for deterrent action on deficiency judgments as described above.  Only those offices with findings raising concerns need to report to the Insured Servicing Branch (ISB) at Headquarters.  ISB will assess those reports as well as data generated by the Pre-foreclosure Sale procedure, and by MIAS (Office of Mortgage Insurance Accounting and Servicing) on defaults, foreclosures, DJ-related claims submissions and other trends.  If the Office of Insured Single Family Housing concludes that further action is necessary to deter mortgagor abuse, it will communicate its findings back to the local Offices.

6

Servicing) on defaults, foreclosures, DJ-related claims submissions and other trends.  If the Office of Insured Single Family Housing concludes that further action is necessary to deter mortgagor abuse, it will communicate its findings back to the local Offices.

G.Conclusion.

   HUD's policy regarding the pursuit of Single Family Deficiency Judgments has evolved in response to the changing circumstances confronting the Department.  For reasons such as (1) the near-elimination of new investor loans from Single Family FHA programs, (2) the deterrence of certain forms of abuse which were more rampant in the past, and (3) the economic recovery affecting much of the country, the Office of Housing has decided to reserve the use of deficiency judgments to those situations

where local Offices decide that there is a pronounced need to counter
existing abuse within their respective jurisdictions.  Once a decision is
made to pursue mortgagor(s) for deficiency judgments, that course of action
must be carried out fairly, reasonably, and in accordance with State law.
Thank you for your attention to this communication.

                        _____
                        Nicolas P. Retsinas
                        Assistant Secretary for Housing-
                          Federal Housing Commissioner

Attachment

        U.S. Department of Housing and Urban Development
        ATTACHMENT
        Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

        MEMORANDUM FOR:  Regional Directors, Office of Housing
                         Directors, Housing Management Division

            ATTENTION:  Staff Whose Duties Include SF Deficiency Judgment
                         Program

            FROM:  Joseph Bates, Director, Single Family Servicing
                         Division, HSIS

            Paulette B. Porche, Director, Title I Accounting and
                Servicing Division, HFMT

SUBJECT:  Single Family Deficiency Judgment Guidelines (SFDJ)

        The following instructions and guidelines outline the
procedures to follow when handling Deficiency Judgment accounts
after a judgment has been obtained or where no judgment was
ultimately pursued because the mortgagor(s) entered into an
Agreement to Avoid Judgment.  The Title I and Other Debt
Collection Handbook, 4740.2 REV-2 dated August 28, 1992,
contains guidance that will also be helpful.

        Prior to formal judicial action on the deficiency judgment
matter, the mortgagor may approach the Single Family Loan Management
Branch (SFLM) to work out a pre-judgment settlement.  When the
mortgagor makes a settlement offer, the SFLM staff member determines
whether the offer is in the best interest of the Department of Housing
and Urban Development (HUD).  The SFLM Branch may accept a compromise
or repayment plan offer in lieu of pursuing a judgment.

DEFICIENCY JUDGMENTS

        If a Deficiency Judgment has been formally obtained, a
complete package shall be immediately forwarded to the appropriate
Debt Management Center (DMC) for collection.  The SFLM Branch shall
never solicit offers to settle the accounts.  It is the
responsibility of the SFLM Branch to ensure that the Deficiency

Judgment has been properly recorded, in accordance with the regulations of the state where it was obtained, prior to forwarding to the DMC for collection. This action is necessary to ensure that the DMC has an enforceable debt for collection and is also required prior to referral to credit bureaus if

2

delinquent.

SUBMISSION OF PACKAGE TO DMC:

Once the deficiency judgment is obtained and the Field Office is so notified, or a pre-judgment settlement is entered into with a mortgagor, the SFLM staff member assembles a package and forwards it to the DMC handling collections for that Field Office. The package must include the following forms and documents properly executed:

1. A MIAS Notification form, HUD-56143 (Attachment 1) Please note new address for submission.

2. Copy of Judgment or Agreement to Avoid Judgment HUD-56145 and repayment plan if applicable

3. Evidence that the Judgment has been recorded (for Judgments only)

4. Original Deed of Trust assigned to HUD

5. Executed assignment to HUD of the lender's right to bring action against mortgagors for deficiency, if applicable

6. Mortgagor Information sheet (from the mortgagee)

7. Copy of the mortgagor's initial credit application and supporting documents

8. Deed of Trust (optional)

9. Available mortgagee servicing records and all such financial information regarding the mortgagor's assets

10. Satisfaction or Release of Liability, if applicable.

The above documentation is required for actual deficiency judgments as well as for pre-judgment compromises and partial settlements.

PREJUDGMENT SETTLEMENTS

SETTLEMENT BY COMPROMISE OFFERS:

A compromise is probably the most common form of pre-judgment settlement. A compromise offer, made by a mortgagor/debtor, if accepted, relieves a debtor of a portion of her/his liability; results in the end of collection efforts

3

against that particular person after payment in full of the agreed upon
amount; and may require reporting to the Internal Revenue Service (IRS),
"discharge of indebtedness" as income the difference between the estimated
deficiency judgment and the actual compromised amount.

A compromise is appropriate when the debtor's financial ability will
not permit payment of the judgment or estimated judgment in full; or when
the risks or cost of litigation do not justify enforced collection and
dictate acceptance of less than the full amount due.

EXCEPTIONS:  No compromise can be considered when there is an
indication of fraud, false claim, or misrepresentation, unless the
Department of Justice has declined criminal prosecution.

NOTE:It is intended that each compromise settlement be concluded by a
single lump-sum payment or, at most by installments that are
payable over a period not to exceed three months from the
settlement date.  If negotiations between HUD and the debtor fail
to arrive at either of these outcomes, the formal pursuit of a
deficiency judgment shall be resumed.

A.CRITERIA FOR ACCEPTANCE.  An account may be compromised if any of the
following criteria apply:

1.There is real doubt as to the present and prospective ability of
the debtor to pay in full in accordance with a reasonable payment
Plan.

This determination can only be made after considering the age and
health of the debtor, her/his present and potential income,
number of dependents, current obligations.

2.There is real doubt as to the Government's ability to collect
through litigation, judicial sale or attachment of debtor's
property.

3.The cost of collecting the estimated judgment amount in full
would not justify enforced collection of the whole amount.

NOTE:A settlement with only one debtor when two or more are
liable for the debt will be handled as a partial settlement
(see Paragraph E), not as a compromise.

4

B.REVIEW AND EVALUATION OF COMPROMISE OFFER.  The SFLM Branch is
responsible for reviewing, analyzing, and recommending approval or
disapproval of all pre-judgment compromise offers.  In making this
decision, a complete analysis of the supporting documentation and the
amount of the compromise should be conducted.  At a minimum the
following should be reviewed:

1.    Compromise proposal,
2.    HUD-56142, Financial Statement, or financial data,
3.    Copy of latest Income Tax Return,
4.    Credit Report,
5.    Justification support documents, i.e., evidence of

unemployment, disability, etc., and impact on
ability to pay,
6.   An explanation of the source and conditions (if any)
attached to offered funds,
7.   HUD-55509, Compromise/Partial Settlement Approval
Worksheet.

The debtor shall be advised during the compromise negotiations that
acceptance of the compromise offer may result in HUD reporting the
"forgiven" amount to the IRS as income on form 1099-G.  Whether any,
all, or part of the forgiven amount will be reported to the IRS will
be determined by the debtor's solvency.

C.ACCEPTANCE OF COMPROMISE OFFER.  The Loan Management Branch Chief
shall accept or reject pre-judgment compromise offers.  The SFLM staff
member shall submit the recommendation, with justification and
analysis supporting the action and the amount of the compromise, to
the Loan Management Branch Chief for action.

Only in rare circumstances can the Loan Management Branch Chief
approve a compromise without the debtor providing financial data.  The
financial data is required to determine the debtor's solvency, whether
all or part of the debt will be reported to the IRS as taxable income,
and whether it is in HUD's interest to accept a compromise offer.

If the compromise is accepted, the SFLM staff member shall notify the
debtor in writing and arrange for payment.  Generally, payments should
be received within 30 to 60 days if payment did not accompany the
offer.

                              5

D.PAYMENT OF COMPROMISE OFFER.  Payments should be by certified check,
cashier's check, or postal money order.

If payment is not submitted with the offer, a statement indicating the
date that funds will be made available is necessary.  Collection
should normally be completed within 30 to 60 days of acceptance of the
offer.  Remittances obtained in connection with compromise proposals
may be withheld from deposit, in accordance with Handbook 1911.1
REV-4, Handling and Protecting Cash and Other Negotiable Instruments,
until a decision is made on the offer by the Loan Management Branch
Chief.

Compromises payable in installments are discouraged.  If a compromise
must be paid in installments, the SFLM staff member shall obtain a
written compromise agreement (Attachment 2) signed by the debtor that
provides for full payment of the compromised amount over a period not
to exceed 3 months.  This agreement must specify that default in the
payment of any installment will void the compromise.

Documentation.  The basis for acceptance or rejection of a
pre-judgment compromise offer should be documented in detail, filed
with other supporting documents, and submitted to the DMC with the
other SFDJ information.

E.SUBMISSION OF DOCUMENTATION.  Complete documentation must be submitted

for all pre-judgment compromises, including those where full payment is received, because all SFDJ cases are entered into the automated Generic Debt Collection System. Complete and accurate debtor financial data is critical to determining whether a 1099-G should be issued.

F. PARTIAL SETTLEMENT OFFER. A partial settlement is an offer by one or more debtors, but not all debtors on an account. The debtor making the partial settlement is released from further liability and the case is referred to the DMC for collection from the remaining debtor(s). A 1099-G is not issued for partial settlements.

G. FRAUD. If during the negotiation of compromises or partial settlements it is determined that fraud or misrepresentation exists or is suspected, such cases will be referred to the appropriate officials for investigation. In such cases, no referral will be made to the DMC until these issues are resolved.

6

ISSUING SATISFACTIONS OR RELEASING LIABILITY:

The SFLM Branch office shall issue a Notice of Satisfaction of Debt or Release of Liability for debt under the following circumstances:

1. Debtor pays-in-full prior to submission to the DMC
2. Debtor pays full amount of pre-judgment compromise prior to submission to the DMC
3. Debtor pays full amount of partial settlement prior to submission to the DMC.

The DMC will issue Satisfactions and Release of Liability documents for all payments-in-full, compromises, and partial settlements paid after the debt has been properly referred to the DMC for collection action.

REPORTS ANALYSIS AND RECONCILIATION:

Inventory and collection reports for the previous month will be made available to each Loan Management office by the 10th of each month. The Loan Management Office shall review the reports to determine if all of the cases referred to the DMC are included on the reports. If cases are not shown on the report and the DMC has not requested additional information from the Loan Management office, the SFLM staff will notify the DMC that the cases were omitted. The DMC will contact the Accounting Section to see if it received the documents. If not, the DMC will ask the SFLM staff to send the documents directly to Accounting immediately.

U.S. Department of Housing and Urban Development
H O U S I N G

| | |
|---|---|
| Special Attention of: | Notice    H 93-44 (HUD) |
| Directors of Housing | |
| Field Office Managers | Issued:  06/28/93 |
| Directors of Housing Management | Expires: 06/30/94 |
| Regional Coordinators for | |
| _____ | |
|   Mortgagee Reviews (RCMR) | Cross References: |
| Chiefs of Single Family Loan | |
|   Management | |

Subject:  Rescinding Quarterly Reporting for the Single Family
          Deficiency Judgment Program

     This is to advise that the Regional Offices of Housing will
no longer be required to compile Deficiency Judgment Reports from
the various Field Offices in their respective jurisdictions and
forward Regional Quarterly Report to Ann Sudduth, Chief, Insured
Servicing Branch in Headquarters.

     Title I Accounting and Servicing Division is maintaining and
updating collections for all deficiency judgment accounts in a
Generic Debt Collection System.  The Division will be generating
and distributing monthly reports to the Debt Management Centers,
Headquarters and to the Regional Offices of Housing for distribution
to the Field Offices under their jurisdiction.  The Division
will also conduct an annual reconciliation of the Field Offices'
records with the automated Title I data base.  Therefore, the
Field Offices must continue to maintain accurate records on the
status and collection activity in pursuing Deficiency Judgments.

                    Sincerely yours,


                    _____
                    Nicolas P. Retsinas
                    Assistant Secretary for Housing
                      - Federal Housing Commissioner


_____

HSISI : Distribution: W-3-1, W-2(H)(A)(OGC), W-3(H)(A)(Z)(OGC), W-4(H),
R-1, R-2, R-3, R-3-1(H), R-3-2, R-3-3, R-6, R-6-1, R-6-2, R-7, R-7-1,
R-7-2, R-8, R-8-1

Previous Editions Are Obsolete                    HUD-21 B(3-80)
                                                  GPO 871 902

# APPENDIX F

www.hudclips.org


U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, D. C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY FOR
HOUSING-FEDERAL HOUSING COMMISSIONER
May 3, 1989
Mortgagee Letter 89-14
TO:  ALL APPROVED MORTGAGEES
ATTENTION:  Servicing Managers (Single Family)
SUBJECT:  Implementation of Deficiency Judgment Activities

     The Department of Housing and Urban Development (HUD) published
its Final Rule on deficiency judgments in the Federal Register on
February 16, 1988 (at 53 FR 4384).  The Rule, which appears in the
Code of Federal Regulations at 24 CFR 203.369, went into effect on
March 28, 1988.  It makes it possible for HUD to require that lenders
pursue deficiency judgments, but only in cases where foreclosures
involve mortgages insured pursuant to firm commitments (or direct
endorsement credit worksheets) issued on or after March 28, 1988.
For those mortgages insured pursuant to firm commitments (or direct
endorsement credit worksheets) issued prior to March 28, 1988, the
Department can continue to request that mortgagees diligently pursue
deficiency judgments against selected mortgagors.  Until recently,
HUD was not authorized to reimburse lenders for the full expense of
obtaining deficiency judgments.  That situation has been rectified by
new regulation 24 CFR.203.402(o), which makes the added costs (which
must be reasonable and customary) of pursuing the judgments 100
percent reimbursable.  HUD strongly encourages mortgagees to
cooperate with requests from Field Offices regarding deficiency
judgments.

     The Department has already begun requesting or requiring
mortgagees to obtain deficiency judgments in instances where the
mortgagors are non-occupant owners; have previously defaulted on one
or more FHA-insured mortgages resulting in the payment of claim(s);
or are "walkaways," having abandoned their mortgage payment
obligations despite their apparent continued ability to pay.  This
will continue to occur where the pursuit of deficiency judgments is
consistent with State law.

     HUD will be using data collected by the Department that
identifies mortgagors with two or more FHA-insured mortgages, as
well as information from the single family default monitoring
system.  When these reports are combined, they yield listings of FHA
mortgagors who are by definition non-occupant owners and are also in
a default or pending-foreclosure status (or have already experienced
foreclosure) on one or more FHA-insured mortgage loans.  In addition,
mortgagee monitoring staff outstationed from HUD Headquarters, and
loan management staff in many Field Offices around the country, will
pass along information about prospective subjects for deficiency

                                                          2

judgments to the staffer responsible for determining which mortgagors
to pursue.  He or she in turn will contact the mortgagees (first by
telephone, then by follow-up letter) to advise them that HUD is

requesting or requiring them to seek deficiency judgments against those
mortgagors who have been selected for such treatment.

Mortgagees, if requested or required by HUD Field Offices to
pursue deficiency judgments against particular mortgagors, will be
instructed to assign all the judgments they obtain to HUD. (Model
forms facilitating this action will soon be made available by Field
Offices to mortgagees, along with additional instructions.)
Mortgagees are specifically directed not to engage in collection of
deficiency judgments obtained in connection with any FHA-insured
mortgage, effective immediately. The Department will utilize various
methods to collect once the judgments are assigned, including
conventional means of pursuing the judgment debtors by HUD personnel,
use of private collection agencies and/or judicial proceedings
initiated by the U.S. Department of Justice, salary or administrative
offset (for active or retired Federal and military personnel), and
Internal Revenue Service (IRS) offset of tax refunds. Some of these
measures may result in additional fees that are chargeable to the
debtor.

If the judgment debt is declared uncollectible, in whole or in
part, by the Federal Government, the amount of the uncollectible
debt will be reported by HUD to the IRS on Form 1099-G. Mortgagors
who successfully negotiate compromise settlements will also be the
subject of an IRS information return on Form 1099-G for any
indebtedness "forgiven" by the Government under the terms of the
settlement. Before the Form 1099-G can be filed, however, the debt
amount must be compromised or declared uncollectible by Federal
administrative procedure, or else the applicable Statute of
Limitations on enforcement of the deficiency judgment must have run.
The Department now anticipates that it will have the necessary
procedures in place for Form 1099-G reporting by the second half of
1989.

The procedure of pursuing a specific mortgagor for a deficiency
judgment can begin in two different ways. As discussed above, HUD
may request or require the mortgagee to take this action based on
data gathered "in-house." Alternatively, the mortgagee can initiate
the process by bringing information to the attention of the local HUD
Office indicating that a mortgagor meets the criteria for pursuit of
a deficiency judgment. The Department encourages lenders to
communicate the details of serious abuses of which they are aware to
the Loan Management Branch Chief at the appropriate HUD Office.

---

3

Please note that only where pursuit of the deficiency judgment was
requested or required by the Department, or where HUD has approved a
mortgagee's request for permission to pursue a judgment, will the
expenses connected with this action be reimbursable when the claim is
filed.

Another noteworthy aspect of HUD's deficiency judgment
initiative is the Department's use of the Claims Without Conveyance
of Title (CWCOT) procedure to establish the Commissioner's Adjusted
Fair Market Value (CAFMV), which is the amount the mortgagee will bid
at the foreclosure sale. It is the CAFMV, or, if a third party bids
higher, the consummated third-party purchase price, that is used to
establish the deficiency judgment amount when it is subtracted from
the mortgagor's outstanding indebtedness at the time of foreclosure.

(Refer to Mortgagee Letter 87-20 , dated June 23, 1987, for a full
explanation of CWCOT.)

   The Department will be widely publicizing its efforts to counter
abuse of the FHA Single Family insurance programs through the
prosecution of deficiency judgments and by the reporting of
uncollectible and/or compromised amounts to the IRS. It is hoped
that these initiatives, directed toward investors, repeat defaulters
and "walkaways" will act as deterrents against abuse.

   HUD will be issuing a separate Mortgagee Letter in the near
future, which provides instructions on how to include deficiency
judgment-related expenses in claims for insurance benefits.

   The cooperation of participating mortgagees is crucial to our
success, and the Department appreciates your commitment to help us
accomplish this objective. Please feel free to call the Single
Family Servicing Division at Headquarters if you have any questions
on this matter, at (202) 755-7330.

                              Sincerely yours,

                              James E. Schoenberger
                              General Deputy Assistant Secretary
                                 for Housing

_____

                         A P P E N D I X

                  ANSWERS TO COMMONLY ASKED QUESTIONS
                     REGARDING DEFICIENCY JUDGMENTS

1.  What is the purpose of the pilot program?

   During the pilot program's approximately six-month run, policies
and procedures will be formulated and evaluated, and thereafter,
applied Department-wide. This means that elements of HUD's
deficiency judgment initiative are subject to change over the coming
six months, making mortgagee cooperation and attentiveness crucial to
the success of the Department's efforts.

2.  To what extent will HUD be requesting or requiring the pursuit of
deficiency judgments?

   The program is envisioned primarily as a deterrent to mortgagor
abuse of the HUD Single Family insurance programs. The number of
deficiency judgments sought will vary by State and by Field Office,
and will be roughly comparable to the level of mortgagor abuse within
a given Office's jurisdiction.

3.  How should a mortgagee facing severe obstacles to complying with
a HUD request or directive to seek a deficiency judgment respond?

   The Department desires the highest level of mortgagee
cooperation that is feasible. Occasionally, legal obstacles may
arise with which the Field Office is unfamiliar. There may be other
factors that seriously complicate or compromise the procedure of
obtaining a deficiency judgment, of which the HUD Office may be
unaware. In such situations, the mortgagee must contact the Loan
Management Branch Chief at the HUD Office with jurisdiction over the
deficiency judgment at issue and explain the special circumstances as

soon as they become known. Based on the information provided, the
Field Office will respond with further instructions to the mortgagee.

4

4. Will the mortgagees and their attorneys be the only parties to
pursue deficiency judgments against mortgagors with FHA-insured
mortgage loans?

In most cases, the mortgagees and their attorneys will be
exclusively involved in the pursuit of deficiency judgments.
However, we anticipate that, in States where legal requirements do
not make it impracticable, some Field Offices will obtain permission
for in-house or contract attorneys to perform the steps leading to
deficiency judgments. Mortgagees are advised, however, that such
instances will be rare and to operate on the presumption that
mortgagees' foreclosure attorneys will be seeking the deficiency
judgments that HUD requests or requires.

5. What kind of information pertaining to FHA-insured mortgagors
are mortgagees expected to share with HUD Field Offices, in the
context of the deficiency judgment initiative?

The Department welcomes information reflective of mortgagors
meeting (or not meeting) the Department's criteria for pursuing
deficiency judgments. Examples include indicating a mortgagor's
status as a non-occupant owner (investor), or one that has defaulted
previously on FHA-insured mortgage(s), or confirming that a candidate
for deficiency judgment is currently in default, or that he or she is
a "walkaway" (a mortgagor who abandons his property despite his
apparent continued ability to meet his mortgage obligations, that is,
for reasons other than financial hardship). This information may be
volunteered by the mortgagees/servicers, or else provided to the
Department when specifically requested by HUD personnel. Information
regarding the mortgagor of which HUD may be unaware and which
potentially demonstrates the inapplicability of the criteria to a
given mortgagor should be forwarded to the Loan Management Branch
Chief after the mortgagee has made a reasonable effort to verify
said information (e.g., that mortgagors were in fact owner-
occupants, or vacated and hence did not abandon their property
after foreclosure occurred due to financial hardship).

# APPENDIX G



**U. S. Department of Housing and Urban Development**
**Regional Administrator**
**Region IV**

2 8 OCT 2015

Mr. Christopher Kruger
The Law Offices of Kruger & Gruber, LLP
Civil Rights and Consumer Advocates
500 N. Michigan Avenue, Suite 600
Chicago, IL 60611

Dear Mr. Kruger:

SUBJECT: Freedom of Information Act (FOIA) Request
FOIA Control No.: 15-FI-RO4-02086

This letter is in response to your FOIA request received in our office on September 17, 2015, requesting the following information:

1. The number of foreclosures of FHA loans in Illinois;
2. The number of foreclosures of FHA loans in Illinois, in which the pursuit of a deficiency judgment was authorized;
3. Criteria for determining whether a deficiency judgment should be pursued; and
4. Reports indicating the reasons for authorizing pursuit of deficiency judgments.

We are releasing the information in part. Enclosed, please find the FHA Foreclosure trends by month and calendar year for the State of Illinois, providing the number of foreclosures of FHA loans in Illinois.

There have been zero foreclosed FHA loans in Illinois in which the pursuit of a deficiency judgment was authorized. FHA is not currently pursuing deficiency judgments. HUD published its Final Rule on deficiency judgments in the Federal Register on February 16, 1988, (at 53 FR 4384). The Rule, which appears in the Code of Federal Regulations at 24 CFR 203.369, went into effect March 28, 1988. Mortgagee Letter 2008-43, issued December 24, 2008, reminded Mortgagees that if a foreclosure occurs after the mortgagor unsuccessfully participated in the Pre-Foreclosure Sale process in good faith, neither the mortgagee nor HUD will pursue the mortgagor for a deficiency judgment. Mortgagee Letter 2014-24, issued November 26, 2014, discussed the use of FHA's Claims without Conveyance of Title (CWCOT) procedures.

After weighing the significant anticipated costs and limited potential benefits, the Department has determined it is not in the best interests of FHA to routinely seek deficiency judgments in connection with CWCOT claims. Therefore, FHA is not requesting that the mortgagees pursue any deficiency judgments in connection with CWCOT claims, unless FHA makes a special request pursuant to 24 CFR 203.369. FHA does not have a referral to foreclosure letter, FHA insurance is a guaranty and the servicers own the loans, they all use their own referral letter/method. Since FHA is not currently pursuing deficiency judgments, we do not maintain any reports tracking deficiency judgments.

2

If you consider this response a denial of your request, you may request a review of this decision within thirty days of the issuance of this letter. The filing of the request for review may be accomplished by mailing to U.S. Department of Housing and Urban Development, Attention: FOIA Appeals, Office of Ethics, Appeals and Personnel Law, Ethics and Appeals Division, 451 Seventh Street, SW, Suite 2130, Washington, DC 20410, a copy of the request, a copy of the written denial, and a statement of the circumstances, reasons, or arguments advanced in support of disclosure of the original request for the record. The envelope containing the request and the letter should both clearly indicate that the subject is a Freedom of Information Act request for review.

Your FOIA request, including your identity and any information made available, is releasable to the public under subsequent FOIA requests. In responding to these requests, the Department does not release personally identifiable information such as home address, telephone number, or social security number, all of which are protected from disclosure under FOIA Exemption 6.

If you have further questions related to this letter, please contact the FHA Resource Center at 1(800) 225-5342 and ask to speak to Mr. Kevin A. Shearer, Director, Quality Assurance Division at the Atlanta Homeownership Center.

Sincerely,

Alvera D. Crittendon
Regional FOIA Public Liaison

Enclosure

## FHA Foreclosure Trends by Month and Calendar Year – Illinois



| | | | | | |
|---|---|---|---|---|---|
| ILLINOIS | Jan-12 | 180 | 24,093,432 | 22,099,295 | 31-Jan-12 |
| ILLINOIS | Feb-12 | 176 | 23,416,082 | 21,283,213 | 29-Feb-12 |
| ILLINOIS | Mar-12 | 354 | 48,873,945 | 44,630,980 | 31-Mar-12 |
| ILLINOIS | Apr-12 | 405 | 58,441,495 | 53,582,305 | 30-Apr-12 |
| ILLINOIS | May-12 | 794 | 114,639,639 | 103,482,620 | 31-May-12 |
| ILLINOIS | Jun-12 | 368 | 49,808,464 | 45,036,172 | 30-Jun-12 |
| ILLINOIS | Jul-12 | 277 | 38,821,197 | 35,227,772 | 31-Jul-12 |
| ILLINOIS | Aug-12 | 303 | 38,679,461 | 35,138,181 | 31-Aug-12 |
| ILLINOIS | Sep-12 | 272 | 36,997,970 | 33,453,349 | 30-Sep-12 |
| ILLINOIS | Oct-12 | 326 | 45,418,885 | 41,265,194 | 31-Oct-12 |
| ILLINOIS | Nov-12 | 299 | 43,481,949 | 39,515,712 | 30-Nov-12 |
| ILLINOIS | Dec-12 | 358 | 54,446,402 | 49,841,414 | 31-Dec-12 |
| ILLINOIS | Jan-13 | 426 | 61,203,902 | 55,415,370 | 31-Jan-13 |
| ILLINOIS | Feb-13 | 349 | 47,942,638 | 43,415,831 | 28-Feb-13 |
| ILLINOIS | Mar-13 | 431 | 65,452,432 | 59,466,599 | 31-Mar-13 |
| ILLINOIS | Apr-13 | 478 | 69,973,020 | 63,218,999 | 30-Apr-13 |
| ILLINOIS | May-13 | 629 | 88,959,744 | 80,170,506 | 31-May-13 |
| ILLINOIS | Jun-13 | 409 | 58,000,206 | 52,321,671 | 30-Jun-13 |
| ILLINOIS | Jul-13 | 551 | 79,516,076 | 71,495,317 | 31-Jul-13 |
| ILLINOIS | Aug-13 | 484 | 66,315,144 | 59,437,505 | 31-Aug-13 |
| ILLINOIS | Sep-13 | 375 | 51,020,274 | 45,566,721 | 30-Sep-13 |
| ILLINOIS | Oct-13 | 376 | 50,375,823 | 44,757,437 | 31-Oct-13 |
| ILLINOIS | Nov-13 | 537 | 46,880,169 | 41,891,428 | 30-Nov-13 |
| ILLINOIS | Dec-13 | 249 | 35,550,845 | 32,018,484 | 31-Dec-13 |
| ILLINOIS | Jan-14 | 232 | 31,527,798 | 28,067,195 | 31-Jan-14 |
| ILLINOIS | Feb-14 | 256 | 37,534,489 | 33,704,084 | 28-Feb-14 |
| ILLINOIS | Mar-14 | 227 | 31,781,451 | 28,259,110 | 31-Mar-14 |
| ILLINOIS | Apr-14 | 208 | 29,325,626 | 26,053,632 | 30-Apr-14 |
| ILLINOIS | May-14 | 201 | 27,296,611 | 24,168,409 | 32-May-14 |
| ILLINOIS | Jun-14 | 212 | 27,605,735 | 24,431,126 | 30-Jun-14 |
| ILLINOIS | Jul-14 | 172 | 21,879,717 | 19,325,458 | 31-Jul-14 |
| ILLINOIS | Aug-14 | 278 | 37,260,207 | 32,955,809 | 31-Aug-14 |
| ILLINOIS | Sep-14 | 307 | 41,498,171 | 36,828,815 | 30-Sep-14 |
| ILLINOIS | Oct-14 | 321 | 43,210,309 | 38,072,714 | 31-Oct-14 |
| ILLINOIS | Nov-14 | 234 | 32,619,223 | 28,691,644 | 30-Nov-14 |
| ILLINOIS | Dec-14 | 267 | 37,478,052 | 33,040,059 | 31-Dec-14 |
| ILLINOIS | Jan-15 | 223 | 30,639,365 | 26,709,178 | 31-Jan-15 |
| ILLINOIS | Feb-15 | 270 | 36,349,748 | 31,476,552 | 28-Feb-15 |
| ILLINOIS | Mar-15 | 369 | 49,271,943 | 42,796,147 | 31-Mar-15 |
| ILLINOIS | Apr-15 | 359 | 46,066,522 | 40,040,075 | 30-Apr-15 |
| ILLINOIS | May-15 | 326 | 43,899,034 | 38,162,564 | 31-May-15 |
| ILLINOIS | Jun-15 | 353 | 47,625,633 | 41,232,201 | 30-Jun-15 |
| ILLINOIS | Jul-15 | 277 | 37,999,387 | 32,830,105 | 31-Jul-15 |
| ILLINOIS | Aug-15 | 298 | 40,866,436 | 35,291,137 | 31-Aug-15 |

# APPENDIX H

Cook County #21762

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - CHANCERY DIVISION

Nationstar Mortgage LLC

**PLAINTIFF**

Vs.

Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi; Daphne Dawoudi; Unknown Owners and Nonrecord Claimants

**DEFENDANTS**

2015CH16790
CALENDAR/ROOM 59
TIME 00:00
No. Owner Occupied



### COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, NATIONSTAR MORTGAGE LLC, by and through its attorneys, CODILIS & ASSOCIATES, P.C., complaining of the defendants herein and, pursuant to 735 ILCS 5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons identified in the above caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a copy of the Mortgage. Attached as "EXHIBIT B" is a copy of the Note.

3. Information concerning said Mortgage:

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 12/21/2012

    (C) Name of mortgagor(s):

        Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi

    (D) Name of the original mortgagee:

        Mortgage Electronic Registration Systems, Inc. as Nominee for Freedom Mortgage Corporation

    (E) Date and Place of Recording or Registering:

        1/8/2013
        Office of the Recorder of Deeds of Cook County Illinois

    (F) Identification of Recording: Document No. 1300857517

**Page 1 of 4**

(G) Interest subject to the mortgage: Fee Simple.

(H) Amount of original indebtedness:

    (1) Original Indebtedness: $T45,874.00

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 83 IN HIGG'S SUBDIVISION OF LOT 8 AND PART OF LOT 7, IN J.H. REE'S SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY ILLINOIS, SITUATED IN COOK COUNTY, ILLINOIS.

COMMONLY KNOWN AS: 

TAX PARCEL NUMBER:

(J) Statement as to defaults: Mortgagors have not paid the monthly installments of Principal, taxes, Interest and insurance for 02/01/2015, through the present; the Principal balance due on the Note and the Mortgage is $140,175.39, plus Interest, costs, advances and fees. Interest accrues pursuant to the Note, and the current per diem is $13.63.

(K) Name of present owner(s) of said premises:
    Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

Daphne Dawoudi, by virtue of the fact that, upon information and belief, he/she is in possession of the subject real estate and may have some interest therein; Plaintiff alleges that the interest of Daphne Dawoudi is subordinate and inferior to the lien of its mortgage.

(M) Names of defendants claimed to be personally liable for deficiency, if any:

Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208.

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons

Page 2 of 4

or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default under the mortgage.

(R) Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T) Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Ansarullah H. Dawoudi a/k/a Ansarullah Habeebullah S. Dawoudi; Daphne Dawoudi

4. Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

**WHEREFORE, THE PLAINTIFF REQUESTS:**

1.    A judgment of foreclosure and sale.

2.    An order granting a shortened redemption period, if sought.

3.    A personal judgment for deficiency, if applicable and sought, and only against parties who have signed the Note or monetary obligation which is the subject matter of this complaint, or persons who have assumed liability of the Note or monetary obligation which is the subject matter of this complaint, and who have not received a Chapter 7 bankruptcy discharge and who are not personally protected by the automatic stay at sale confirmation.

4.    An order granting possession, if sought.

5.    An order placing the mortgagee in possession or appointing a receiver, if sought.

6.    A judgment for attorneys' fees, costs and expenses, if sought.

7.    For the appointment of a Selling Officer, if deemed appropriate by this court.

8.    Such other and further relief as this court deems just.


Nationstar Mortgage LLC

BY:

CODILIS & ASSOCIATES, P.C.
One of its Attorneys

Johnny Frevert
ARDC # 6305960


Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
14-15-07914

PERSONAL INFORMATION REDACTED

# Exhibit A

**Illinois Anti-Predatory Lending Database Program**

Certificate of Compliance

Mail To:
Carrington Title Partners, LLC
1919 S. Highland Ave., Ste 315-B
Lombard, IL 60148
(630)317-0049

2012 - 0429408

Report Mortgage Fraud
800-532-8785

Doc#: 1300857517 Fee: $56.00
Karen A. Yarbrough RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/08/2010 12:27 PM Pg: 1 of 10

---

The property identified as:    PIN: 13-10-309-019-0000

Address:
Street: ▉▉▉▉▉▉▉
Street line 2:
City: ▉▉▉▉          State: IL          ZIP Code: ▉▉▉▉

Lender: Freedom Mortgage Corporation

Borrower: Ansarullah Habeebullah S. Dawoudi

Loan / Mortgage Amount: $145,874.00

Pursuant to 765 ILCS 77/70 et seq., this Certificate authorizes the County Recorder of Deeds to record a residential mortgage secured by this property and, if applicable, a simultaneously dated HELOC.

Certificate number: 6C85CA4B-F482-4DAB-9DA3-1F8968520F12          Execution date: 12/21/2012

1300857517 Page: 2 of 10

~~Return To:~~
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001
Prepared By:

STEPHANIE SOURAPAS

State of Illinois

# MORTGAGE

FHA Case No.

▮▮▮▮▮▮▮▮▮

MIN ▮▮▮▮▮▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on December 21, 2012
The Mortgagor is Ansarullah Habeebullah S Dawoudi, a married person.

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. Freedom Mortgage Corporation

("Lender") is organized and existing under the laws of The State of New Jersey                    , and
has an address of 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054
. Borrower owes Lender the principal sum of
One Hundred Forty Five Thousand Eight Hundred Seventy Four and 00/100
Dollars (U.S. $145,874.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2043
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Illinois Mortgage with MERS - 4/96
VMP-4N(IL) (0109)
Amended 2/01
Page 1 of 8                    Initials: AHD -QD.
VMP MORTGAGE FORMS - (800)521-7291

1300857517 Page: 3 of 10

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Cook                                                    County, Illinois:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID #: ▮▮▮▮▮▮▮
which has the address of ▮▮▮▮▮▮▮▮▮          [Street]
▮▮▮▮▮▮          [City], Illinois ▮▮▮▮          [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

▮▮▮▮-4N(IL) (0109)                          Page 2 of 8                          Initials: *AHD  Q.Q.*

1300857517 Page: 4 of 10

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or



Page 3 of 8

Initials: AHD - Q.Q

1300857517 Page: 5 of 10

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:



Initials _AHD_   _D.D_

Page 4 of 8

1300B57517 Page: 6 of 10

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



Page 5 of 8

Initials: _AHD_ - _D.R_

1300857517 Page: 7 of 10

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.



Page 6 of 8

Initials: AHD ~Q. IQ

1300857517 Page: 8 of 10

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider               ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

Page 7 of 8

Initials: *AHD · D.D.*

1300857517 Page: 9 of 10

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _Ansarullah Habeebullah Dawoudi_ (Seal)
                                           Ansarullah Habeebullah S Dawoudi   -Borrower

_____          _Daphne Dawoudi_ (Seal)
                                                                           -Borrower

_____(Seal)            _____(Seal)
                       -Borrower                                -Borrower

_____(Seal)            _____(Seal)
                       -Borrower                                -Borrower

_____(Seal)            _____(Seal)
                       -Borrower                                -Borrower

STATE OF ILLINOIS,                                    Cook     County ss:
    I, Bruce Fluxgold                , a Notary Public in and for said county and state do hereby certify
that
Ansarullah Habeebullah S Dawoudi     and Daphne Dawoudi

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

    Given under my hand and official seal, this  21st  day of December, 2012.

My Commission Expires: 8-4-13

                                        _____
                                        Notary Public

"OFFICIAL SEAL"
BRUCE FLUXGOLD
Notary Public, State of Illinois
My Commission Expires 08-04-2013

VMP-4N(IL) (0100)                                    Page 8 of 8

1300657517 Page: 10 of 10

Carrington Title Partners, LLC
1919 S. Highland Ave., Building B, Suite 315
Lombard, IL 60148
A Policy Issuing Agent for
Fidelity National Title Insurance Company

### LEGAL DESCRIPTION

LOT 83 IN HIGG'S SUBDIVISION OF LOT 8 AND PART OF LOT 7, IN J.H. REE'S SUBDIVISION OF THE
SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY, ILLINOIS, SITUATED IN COOK COUNTY, ILLINOIS.

Commonly known as: ███████████████████████
PIN Number: ███████████████

ALTA Loan Policy
Schedule A (6/17/06)                                    (2012-04294DB.PFD/2012-04294DB/10)

| PERSONAL INFORMATION REDACTED | | MIN<br>MERS Telephone |  **Exhibit B** |

# NOTE

**Multistate**

December 21, 2012
*[Date]*

|  | FHA Case No. |
| --- | --- |
|  | ██████████ |

██████████
*[Property Address]*

**1.  PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Freedom Mortgage Corporation

and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Forty Five Thousand Eight Hundred Seventy Four and 00/100
Dollars (U.S. $145,874.00    ), plus interest, to the order of Lender. Interest will be charged on
unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of
Three and One-Half
percent (    3.500 %) per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**
(A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
February 1, 2013 . Any principal and interest remaining on the first day of January, 2043    , will be due on that
date, which is called the "Maturity Date."
(B)  Place
Payment shall be made at P.O. Box 8068, Virginia Beach, VA  23450-8068
or at such place as Lender may designate in writing
by notice to Borrower.
(C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $    655.04    . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.
(D)  Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths

percent (   4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

09/95
VMP1K (1102).00
Page 2 of 3



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
Ansarullah Habeebullah S Dawoudi  -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

*[Sign Original Only]*

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

Pay to the order of

_____

without recourse this _____ day of _____ 20 ___
Freedom Mortgage Corporation

_____
Stanley C. Middleman
President/Chief Executive Officer

Fixed/Adjustable Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (1103).00
Page 3 of 3

# APPENDIX I



# FHA SINGLE-FAMILY MARKET SHARE

2015 Q1

Office of Risk Management and Regulatory Affairs,
Office of Evaluation, Reporting & Analysis Division



U.S. Department of Housing and Urban Development

FHA Single-Family Market Share

| Table 1. FHA Single-Family Insurance Yearly Activity Mortgage Market Shares by Dollar Volume | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | FHA Market Shares (percent) | | | Origination Volume ($ billions) | | | | | |
| | | | | Purchase | | Refinance | | All | |
| Calendar Year | Purchase | Refinance | All | FHA[a] | Market[b] | FHA[a] | Market[b] | FHA[a] | Market[b] |
| 1996 | 11.0 | 4.2 | 8.9 | 59 | 541 | 10 | 242 | 70 | 784 |
| 1997 | 11.5 | 5.2 | 9.2 | 67 | 585 | 10 | 197 | 77 | 783 |
| 1998 | 9.6 | 5.2 | 7.6 | 72 | 751 | 34 | 651 | 106 | 1,401 |
| 1999 | 10.5 | 3.2 | 7.1 | 91 | 867 | 24 | 742 | 115 | 1,608 |
| 2000 | 9.9 | 3.2 | 8.6 | 89 | 897 | 7 | 220 | 96 | 1,119 |
| 2001 | 10.2 | 5.8 | 8.2 | 97 | 951 | 49 | 841 | 146 | 1,791 |
| 2002 | 8.5 | 3.2 | 5.4 | 90 | 1,056 | 49 | 1,526 | 139 | 2,583 |
| 2003 | 6.4 | 2.6 | 3.7 | 78 | 1,221 | 77 | 2,970 | 155 | 4,190 |
| 2004 | 4.4 | 2.0 | 3.2 | 58 | 1,314 | 29 | 1,415 | 87 | 2,730 |
| 2005 | 2.6 | 1.1 | 1.9 | 40 | 1,512 | 16 | 1,514 | 56 | 3,027 |
| 2006 | 2.7 | 1.3 | 2.0 | 38 | 1,399 | 17 | 1,326 | 55 | 2,726 |
| 2007 | 3.9 | 2.9 | 3.4 | 44 | 1,140 | 33 | 1,166 | 77 | 2,306 |
| 2008 | 19.5 | 12.9 | 16.1 | 143 | 731 | 100 | 777 | 243 | 1,509 |
| 2009 | 28.1 | 12.8 | 17.9 | 187 | 664 | 171 | 1,331 | 357 | 1,995 |
| 2010 | 27.4 | 8.6 | 14.9 | 165 | 602 | 103 | 1,203 | 268 | 1,804 |
| 2011 | 25.3 | 6.5 | 13.1 | 128 | 505 | 60 | 931 | 188 | 1,436 |
| 2012 | 21.3 | 7.4 | 11.4 | 125 | 587 | 108 | 1,456 | 233 | 2,044 |
| 2013 | 15.9 | 7.8 | 11.1 | 117 | 734 | 87 | 1,111 | 204 | 1,845 |
| 2014 | 16.5 | 5.7 | 11.9 | 106 | 638 | 28 | 484 | 133 | 1,122 |

[a] U.S. Department of HUD as of July 13, 2015. Originations based on beginning amortization dates.
[b] Mortgage Bankers Association of America, "MBA Mortgage Finance Forecast," July, 2015.

FHA Single-Family Market Share

| Table 2. FHA Single-Family Insurance Quarterly Activity Mortgage Market Shares by Dollar Volume | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Calendar Quarter | FHA Market Shares (percent) | | | Origination Volume ($ billions) | | | | | |
| | | | | Purchase | | Refinance | | All | |
| | Purchase | Refinance | All | FHA[a] | Market[b] | FHA[a] | Market[b] | FHA[a] | Market[b] |
| 2011 Q1 | 27.4 | 13.6 | 19.1 | 27 | 98 | 20 | 148 | 47 | 246 |
| 2011 Q2 | 25.3 | 7.9 | 15.7 | 35 | 139 | 14 | 172 | 49 | 311 |
| 2011 Q3 | 24.6 | 3.9 | 11.4 | 36 | 146 | 10 | 259 | 46 | 405 |
| 2011 Q4 | 24.5 | 4.6 | 9.7 | 30 | 122 | 16 | 352 | 46 | 474 |
| 2012 Q1 | 18.4 | 7.2 | 10.8 | 26 | 139 | 21 | 297 | 47 | 436 |
| 2012 Q2 | 22.3 | 8.2 | 12.9 | 34 | 154 | 25 | 307 | 60 | 461 |
| 2012 Q3 | 23.2 | 7.0 | 11.4 | 35 | 151 | 28 | 399 | 63 | 550 |
| 2012 Q4 | 20.9 | 7.3 | 10.5 | 30 | 144 | 33 | 453 | 63 | 597 |
| 2013 Q1 | 18.9 | 9.7 | 12.2 | 25 | 131 | 34 | 346 | 58 | 477 |
| 2013 Q2 | 15.3 | 8.2 | 10.9 | 32 | 212 | 30 | 360 | 62 | 572 |
| 2013 Q3 | 15.5 | 6.1 | 10.4 | 34 | 218 | 15 | 252 | 49 | 469 |
| 2013 Q4 | 15.1 | 5.5 | 10.6 | 26 | 173 | 8 | 153 | 35 | 326 |
| 2014 Q1 | 16.3 | 5.4 | 10.9 | 20 | 124 | 7 | 123 | 27 | 247 |
| 2014 Q2 | 15.0 | 6.1 | 11.5 | 27 | 179 | 7 | 118 | 34 | 297 |
| 2014 Q3 | 16.9 | 6.0 | 12.7 | 31 | 185 | 7 | 115 | 38 | 300 |
| 2014 Q4 | 17.8 | 5.8 | 12.3 | 27 | 150 | 7 | 128 | 34 | 278 |
| 2015 Q1 | 13.4 | 6.6 | 9.8 | 21 | 155 | 12 | 175 | 32 | 330 |

[a] U.S. Department of HUD as of July 13, 2015. Originations based on beginning amortization dates.
[b] Mortgage Bankers Association of America, "MBA Mortgage Finance Forecast," July, 2015.

FHA Single-Family Market Share

Case: 1:16-cv-02356 Document #: 1-1 Filed: 02/18/16 Page 72 of 75 PageID #:83

| Table 3. FHA Single-Family Insurance Yearly Activity Mortgage Market Shares by Loan Count | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | FHA Market Shares (percent) | | | Loan Count | | | | |
| | | | | Purchase | | Refinance | | All | |
| Calendar Year | Purchase | Refinance | All | FHA[a] | Market[b] | FHA[a] | Market[b] | FHA[a] | Market[b] |
| 1996 | 15.4 | 5.8 | 12.3 | 696,504 | 4,524,674 | 123,475 | 2,146,882 | 819,979 | 6,671,555 |
| 1997 | 16.4 | 6.8 | 13.9 | 758,967 | 4,624,352 | 109,546 | 1,608,195 | 868,513 | 6,232,547 |
| 1998 | 13.9 | 6.8 | 10.5 | 787,703 | 5,656,199 | 348,044 | 5,138,962 | 1,135,747 | 10,795,161 |
| 1999 | 14.7 | 4.1 | 9.5 | 913,216 | 6,226,372 | 244,578 | 5,955,905 | 1,157,794 | 12,182,277 |
| 2000 | 13.9 | 3.9 | 11.7 | 844,835 | 6,074,004 | 65,987 | 1,692,510 | 910,822 | 7,766,513 |
| 2001 | 14.3 | 7.4 | 11.0 | 869,524 | 6,100,159 | 407,424 | 5,526,541 | 1,276,948 | 11,626,700 |
| 2002 | 11.5 | 4.0 | 7.0 | 764,453 | 6,624,756 | 411,781 | 10,296,778 | 1,176,234 | 16,921,535 |
| 2003 | 9.1 | 3.6 | 5.2 | 630,119 | 6,954,384 | 652,853 | 17,932,247 | 1,282,972 | 24,886,631 |
| 2004 | 6.9 | 3.3 | 5.0 | 467,293 | 6,791,344 | 248,428 | 7,527,744 | 715,721 | 14,319,088 |
| 2005 | 4.5 | 1.8 | 3.1 | 322,915 | 7,233,456 | 133,261 | 7,251,637 | 456,176 | 14,485,093 |
| 2006 | 4.5 | 2.0 | 3.3 | 295,261 | 6,563,679 | 115,859 | 5,765,899 | 411,120 | 12,329,578 |
| 2007 | 6.1 | 4.2 | 5.1 | 317,181 | 5,222,266 | 211,093 | 5,071,725 | 528,274 | 10,293,991 |
| 2008 | 24.1 | 15.6 | 19.8 | 844,893 | 3,508,103 | 560,767 | 3,583,680 | 1,405,660 | 7,091,783 |
| 2009 | 32.6 | 14.8 | 21.1 | 1,088,356 | 3,338,302 | 896,558 | 6,052,223 | 1,984,914 | 9,390,525 |
| 2010 | 32.3 | 9.5 | 17.5 | 944,159 | 2,925,707 | 518,571 | 5,432,837 | 1,462,730 | 8,358,544 |
| 2011 | 30.1 | 7.5 | 15.9 | 760,356 | 2,528,488 | 321,847 | 4,276,143 | 1,082,203 | 6,804,631 |
| 2012 | 26.1 | 7.9 | 13.4 | 738,229 | 2,830,441 | 526,626 | 6,629,378 | 1,264,855 | 9,459,819 |
| 2013 | 20.1 | 9.4 | 13.5 | 664,949 | 3,306,869 | 506,993 | 5,384,794 | 1,171,942 | 8,691,663 |
| 2014 | 21.1 | 8.0 | 15.3 | 600,719 | 2,842,324 | 181,738 | 2,266,419 | 782,457 | 5,108,744 |

[a] U.S. Department of HUD as of July 13, 2015. Originations based on beginning amortization dates.
[b] Mortgage Bankers Association of America, "MBA Mortgage Finance Forecast," July, 2015 and Corelogic TrueStandings ® as of July 22, 2015.

FHA Single-Family Market Share

| | FHA Market Shares (percent) | | | Loan Count | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Purchase | | Refinance | | All | |
| Calendar Quarter | Purchase | Refinance | All | FHA[a] | Market[b] | FHA[a] | Market[b] | FHA[a] | Market[b] |
| 2011 Q1 | 31.4 | 15.0 | 21.7 | 153,781 | 489,539 | 105,258 | 701,921 | 259,039 | 1,191,460 |
| 2011 Q2 | 30.3 | 9.0 | 18.6 | 208,611 | 686,250 | 74,940 | 835,858 | 283,551 | 1,522,108 |
| 2011 Q3 | 29.6 | 4.9 | 14.4 | 216,334 | 731,038 | 57,440 | 1,164,073 | 273,774 | 1,895,111 |
| 2011 Q4 | 29.2 | 5.3 | 12.1 | 181,630 | 621,661 | 84,209 | 1,574,291 | 265,839 | 2,195,952 |
| 2012 Q1 | 22.2 | 8.2 | 13.0 | 154,848 | 696,192 | 109,331 | 1,333,469 | 264,179 | 2,029,661 |
| 2012 Q2 | 27.7 | 9.0 | 15.4 | 204,185 | 737,241 | 126,289 | 1,410,899 | 330,474 | 2,148,140 |
| 2012 Q3 | 28.4 | 8.1 | 13.9 | 204,184 | 718,282 | 145,503 | 1,801,388 | 349,687 | 2,519,670 |
| 2012 Q4 | 25.8 | 7.0 | 11.6 | 175,012 | 678,726 | 145,503 | 2,083,622 | 320,515 | 2,762,348 |
| 2013 Q1 | 23.1 | 11.3 | 14.5 | 142,196 | 616,172 | 184,543 | 1,639,183 | 326,739 | 2,255,355 |
| 2013 Q2 | 19.7 | 9.8 | 13.3 | 185,190 | 938,479 | 168,517 | 1,727,377 | 353,707 | 2,665,856 |
| 2013 Q3 | 19.4 | 7.8 | 12.9 | 188,184 | 968,280 | 97,818 | 1,254,444 | 286,002 | 2,222,724 |
| 2013 Q4 | 19.1 | 7.3 | 13.3 | 149,379 | 783,938 | 56,115 | 763,790 | 205,494 | 1,547,728 |
| 2014 Q1 | 20.5 | 7.1 | 13.5 | 114,950 | 561,326 | 43,263 | 612,469 | 158,213 | 1,173,795 |
| 2014 Q2 | 19.7 | 8.3 | 14.9 | 155,901 | 790,132 | 47,878 | 574,532 | 203,779 | 1,364,664 |
| 2014 Q3 | 21.6 | 8.4 | 16.4 | 177,677 | 821,853 | 44,476 | 529,951 | 222,153 | 1,351,804 |
| 2014 Q4 | 22.7 | 8.4 | 16.3 | 152,190 | 669,013 | 46,122 | 549,468 | 198,312 | 1,218,481 |
| 2015 Q1 | 17.6 | 8.7 | 13.1 | 117,424 | 666,188 | 60,541 | 696,829 | 177,965 | 1,363,017 |

Table 4. FHA Single-Family Insurance Quarterly Activity
Mortgage Market Shares by Loan Count

[a] U.S. Department of HUD as of July 13, 2015. Originations based on beginning amortization dates.
[b] Mortgage Bankers Association of America, "MBA Mortgage Finance Forecast," July, 2015 and Corelogic TrueStandings ® as of July 22, 2015.

FHA Single-Family Market Share

| Table 5. FHA Single-Family Insurance Activity Mortgage Market Shares by Dollar Volume, Fiscal Years 2004–2014 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | FHA Market Shares (percent) | | | Origination Volume ($ billions) | | | | | |
| | | | | Purchase | | Refinance | | All | |
| Fiscal Year | Purchase | Refinance | All | FHA[a] | Market[b] | FHA[a] | Market[b] | FHA[a] | Market[b] |
| 2004 | 4.8 | 2.3 | 3.5 | 63 | 1,314 | 32 | 1,415 | 95 | 2,729 |
| 2005 | 2.9 | 1.2 | 2.0 | 43 | 1,477 | 18 | 1,506 | 61 | 2,983 |
| 2006 | 2.7 | 1.1 | 1.9 | 39 | 1,441 | 15 | 1,313 | 54 | 2,754 |
| 2007 | 3.2 | 1.9 | 2.5 | 39 | 1,224 | 24 | 1,290 | 63 | 2,514 |
| 2008 | 15.7 | 9.8 | 12.6 | 118 | 754 | 85 | 866 | 203 | 1,621 |
| 2009 | 24.0 | 14.4 | 18.1 | 171 | 711 | 163 | 1,133 | 334 | 1,844 |
| 2010 | 29.5 | 9.1 | 16.2 | 185 | 628 | 107 | 1,173 | 292 | 1,801 |
| 2011 | 25.5 | 8.0 | 14.1 | 131 | 513 | 78 | 973 | 209 | 1,486 |
| 2012 | 22.1 | 6.7 | 11.2 | 125 | 566 | 91 | 1,355 | 216 | 1,921 |
| 2013 | 17.2 | 7.9 | 11.0 | 121 | 705 | 112 | 1,401 | 232 | 2,116 |
| 2014 | 15.8 | 5.8 | 11.4 | 105 | 661 | 29 | 509 | 134 | 1,170 |

[a] U.S. Department of HUD as of July 13, 2015. Originations based on beginning amortization dates.
[b] Mortgage Bankers Association of America, "MBA Mortgage Finance Forecast," July, 2015.

| | Table 6. FHA Single-Family Insurance Activity<br>Mortgage Market Shares by Loan Count, Fiscal Years 2004–2014 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | FHA Market Shares (percent) | | | Loan Count | | | | | |
| | | | | Purchase | | Refinance | | All | |
| Fiscal Year | Purchase | Refinance | All | FHA[a] | Market[b] | FHA[a] | Market[b] | FHA[a] | Market[b] |
| 2004 | 7.1 | 3.5 | 5.2 | 506,373 | 7,086,551 | 282,257 | 8,026,797 | 788,630 | 15,113,348 |
| 2005 | 4.8 | 2.1 | 3.4 | 345,873 | 7,212,562 | 154,316 | 7,412,588 | 500,189 | 14,625,149 |
| 2006 | 4.5 | 1.8 | 3.2 | 301,657 | 6,775,324 | 108,246 | 5,890,360 | 409,903 | 12,665,684 |
| 2007 | 5.2 | 2.9 | 4.0 | 289,309 | 5,609,575 | 158,614 | 5,473,070 | 447,923 | 11,082,644 |
| 2008 | 20.1 | 12.2 | 16.0 | 718,984 | 3,575,020 | 486,562 | 3,979,140 | 1,205,546 | 7,554,160 |
| 2009 | 28.2 | 16.6 | 21.3 | 994,191 | 3,527,164 | 858,301 | 5,183,493 | 1,852,492 | 8,710,657 |
| 2010 | 34.5 | 10.4 | 19.3 | 1,068,855 | 3,100,779 | 552,529 | 5,310,613 | 1,621,384 | 8,411,392 |
| 2011 | 30.4 | 9.2 | 16.9 | 768,585 | 2,529,203 | 412,270 | 4,459,934 | 1,180,855 | 6,989,137 |
| 2012 | 26.9 | 7.6 | 13.6 | 744,847 | 2,773,376 | 465,334 | 6,120,047 | 1,210,181 | 8,893,423 |
| 2013 | 21.6 | 9.4 | 13.3 | 690,582 | 3,201,657 | 629,041 | 6,704,626 | 1,319,623 | 9,906,283 |
| 2014 | 20.2 | 7.7 | 14.5 | 597,907 | 2,957,249 | 191,732 | 2,480,742 | 789,639 | 5,437,991 |

[a] U.S. Department of HUD as of July 13, 2015. Originations based on beginning amortization dates.
[b] Mortgage Bankers Association of America, "MBA Mortgage Finance Forecast," July, 2015 and Corelogic TrueStandings ® as of July 22, 2015.

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANSARULLAH & DAPHNE | ) | |
| DAWOUDI, on behalf of themselves | ) | |
| and a class, | ) | |
| | ) | |
| Plaintiffs, | ) | Case no: 16-cv-2356 |
| | ) | |
| vs. | ) | |
| | ) | Judge Darrah |
| NATIONSTAR MORTGAGE, LLC, | ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

**STIPULATION OF DISMISSAL**

NOW COME the Parties, by and through their respective attorneys and pursuant to Federal Rule of Civil Procedure 41(a), and hereby stipulate and agree to the voluntary dismissal of Plaintiffs' individual claims against Defendant with prejudice, and with each party bearing its own costs and attorneys' fees. Plaintiffs' class claims are dismissed without prejudice, and with each party bearing its own costs and attorneys' fees. This stipulation of dismissal disposes of the entire action.

Respectfully submitted,

EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
*s/Michelle A. Alyea*
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle A. Alyea
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

TROUTMAN SANDERS LLP

*s/ William P. Pipal*
William P. Pipal (Bar No. 6309918)
55 W. Monroe St., Ste. 3000
Chicago, IL 60603
Telephone: (312) 759-1933
Facsimile: (312) 759-1939
william.pipal@troutmansanders.com

<u>**CERTIFICATE OF SERVICE**</u>

       I, Michelle A. Alyea, hereby certify that on February 27, 2017, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system which sent notification to all counsel of record.


                                  <u>s/ Michelle A. Alyea</u>
                                    Michelle A. Alyea