**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANSARULLAH DAWOUDI, | ) | |
| on behalf of plaintiff and the | ) | |
| class members described herein, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:19-cv-03783 |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| doing business as MR. COOPER | ) | |
| and TIAA FSB, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## I.    STATEMENT OF FACTS

Plaintiff Ansarullah Dawoudi has a residential mortgage FHA loan (the "Mortgage Agreement") (Ex. 1 to Def. Mot. To Dismiss) secured by his residence and obtained on December 21, 2012. (Cmplt., ¶¶ 28-29) Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar")  acquired servicing of Plaintiff's loan on or about November 4, 2014. (Cmplt., ¶30) At the time, the loan was delinquent and it was accelerated on or before November 16, 2015. (Cmplt., ¶¶31-32) Nationstar is servicing the loan for TIAA, FSB, d/b/a EverBank ("TIAA"), which owns the loan. (Cmplt., ¶33)

Plaintiff submitted "qualified written requests" ("QWR") to Nationstar asking for invoices showing the legitimacy of various fees and charges added to Plaintiff's loan. (Cmplt., ¶ 33) Specifically, Plaintiff submitted a QWR on November 9, 2019. (Cmplt., App. A) By letter of February 12, 2019, Nationstar refused to provide such information, claiming that "Mr. Cooper is not obligated to respond to requests seeking, confidential, proprietary, or privileged information," and that "invoices to our vendors and our Foreclosure Attorney" constitute such information. (Cmplt., App. B) Proof the services were in fact billed for or paid is not confidential, proprietary or privileged information. (Cmplt., ¶ 36) It is the policy and practice of Nationstar to add sums to borrower's accounts while refusing to provide invoices or other documentation that the sums were actually incurred in the amounts claimed. (Cmplt., ¶ 37)

The Amended Payoff Statement sent to Plaintiff by Nationstar states that "if any scheduled payment is received after the Late Charge grace period as set forth in the applicable Note, a Late Charge of $26.20 will be assessed." (Cmplt., App. C) The quoted language is standard language used by Nationstar. (Cmplt., ¶ 39)

Plaintiff has continually occupied the property. (Cmplt., ¶44) Nationstar was aware of Plaintiff's occupancy of the property as it personally served him with foreclosure papers at the property address. (Cmplt., App. D) Notwithstanding Nationstar's knowledge of Plaintiff's occupancy of the property, Nationstar charged Plaintiff for $265.00 in property inspection fees. (Cmplt., ¶ 46) On information and belief, Nationstar's inspections confirmed the property was

-1-

occupied. (Cmplt., ¶ 47) Nationstar sent Plaintiff statements which included the $265.00 in late charges in the balance owed on the loan. (Cmplt., App. E-I) Plaintiff has spent money challenging Nationstar's fees, in that he contacted Nationstar to dispute the inspection fees via certified mail, and spent time doing so. (Cmplt., ¶50)

On March 28, 2019, Plaintiff sent to Nationstar, an agent of TIAA, a request for a mortgage payoff statement via certified mail. (Cmplt., App. J) United States Postal Service tracking shows that Plaintiff's March 28, 2019 payoff statement request was delivered to Nationstar on Tuesday, April 2, 2019. (Cmplt., App. K) Plaintiff received a response dated April 18, 2019 which incorrectly stated that Nationstar received Plaintiff's payoff statement request on April 4, 2019. (Cmplt., App. L) The response failed to provide the payoff statement and instead directed Plaintiff to contact Nationstar for reasons that were not explained. *Id*. As of the date of this filing, Nationstar has not provided the payoff statement as Plaintiff requested. (Cmplt., ¶54)

## II.  DEFENDANTS' MOTION TO DISMISS THE PROPERTY INSPECTION CLAIM SHOULD BE DENIED

### A.  Plaintiff's Mortgage Does Not Permit Property Inspection Fees

Defendants contend that Plaintiff's property inspection claim should be dismissed because the Mortgage allegedly allows the charging of property inspection fees in the event Plaintiff defaults.  However, there is no provision in the Mortgage (Ex. 1 to Def. Mot. To Dismiss) that expressly authorizes Nationstar to charge Plaintiff for inspection fees. The sections that are most closely on point are §§5, 7 and 8:

> **5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**. … Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

> **7.  Charges to Borrower and Protection of Lender's Rights in the Property.** … If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), *then Lender may do and pay whatever is necessary*  to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2. Any *amounts disbursed by Lender* under this paragraph shall become an additional debt of Borrower and be secured by this Security

Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.  (Italics added)

These sections do not authorize Nationstar to repeatedly charge Plaintiff for inspection fees when Nationstar knew the property was occupied and not neglected, as is the case here. Section 5 allows Nationstar to inspect the property in the case of default, but it only permits "reasonable action" when the property is vacant or abandoned; it is not even clear what "reasonable action" entails. Furthermore, §7 does not expressly state that inspection fees can be charged or become additional debt.

Thus, Defendants cannot rely on contract law to collect property inspection fees. The Mortgage (Ex. 1 to Def. Mot. To Dismiss) does not authorize Nationstar to collect property inspection fees, and even if it did, it would be a question of fact as to whether the fees imposed in this case were necessary and reasonable in order to protect the property.

## B.     HUD Prohibits the Fees

Even if inspection fees were included explicitly in §7, §8 clearly prohibits Nationstar from charging Plaintiff for inspection fees.  An FHA regulation, 24 C.F.R. §203.377, provides:

> The mortgagee, *upon learning that a property subject to a mortgage insured under this part is vacant or abandoned*, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass...  (Emphasis added)

The FHA interprets 24 C.F.R. § 203.377 to mean that once a property has been found to be occupied, no further inspections may be charged. *HUD Handbook 4330.1* Ch. 9—9(A)(c)(2)(d); *Mortgagee Letter 81-26* 1981 WL 389744 at *1 (June 16, 1981). Furthermore, FHA regulations are incorporated into the note and mortgage, and the restriction limits what may be charged to the borrower. *In re Ruiz,* 501 B.R. 76, 79 (E.D. Pa. 2013); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.,* 4:13cv669, 2016 WL 393868 (E.D. Ark. Jan 29, 2016). Thus, §8

precludes Nationstar from collecting inspection fees because such fees are not authorized by the Secretary of Housing and Urban Development ("HUD"). Defendants' citation of *Rizzo v. Pierce & Assocs.,* 351 F.3d 791, 794 (7th Cir. 2003) ("A lender does not violate the FDCPA by charging fees expressly authorized by a mortgage agreement") thus has no bearing on the current proceeding.

Defendants argue that neither the FHA regulations nor the HUD Handbook preclude them from collecting property inspection fees. However, this interpretation comes from an incomplete reading of FHA regulations and the HUD Handbook. As stated above, the FHA interprets 24 C.F.R. § 203.377 to mean that once a property has been found to be occupied, no further inspections may be charged. FHA regulations are incorporated into the note and mortgage.

Defendants' argument on this point primarily centers on evidence that HUD and the FHA require mortgagees to conduct property inspections to preserve their security interests, even when the properties are occupied. This argument distracts from the real issue, which is whether the mortgagee can *charge the mortgagor* inspection fees when the mortgaged property is occupied. As the HUD Handbook clearly demonstrates in its interpretation of 24 C.F.R. §203.377, "if there is evidence that the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office, such charges are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits." *HUD Handbook 4330.1* Ch. 9—9(A)(c)(2)(d).

Defendants also argue that violations of FHA regulations only affect the mortgagee's ability to recover FHA benefits, such as expense reimbursements, and that these violations provide no private right of action. However, as set forth in the next section, the FDCPA does provide a private right of action.

### C.    Nationstar Violated the FDCPA By Charging the Fees

Since the Mortgage does not authorize the fees and HUD regulations prohibit them,

Nationstar violated numerous sections of the Fair Debt Collection Practices Act ("FDCPA") –
15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1)  –  by charging Plaintiff
for unauthorized property inspection fees and falsely representing that it had the right to collect a
balance that included unauthorized property inspection fees.  Section 1692e and 1692f provide as
follows:

> **§ 1692e. False or misleading misrepresentations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or
> means in connection with the collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2) The false representation of—**
>
> > **(A) the character, amount, or legal status of any debt; or**
> >
> > **(B) any services rendered or compensation which may be lawfully received
> > by any debt collector for the collection of a debt. . . .**
>
> **(5) The threat to take any action that cannot legally be taken or that is not intended
> to be taken. . . .**
>
> **(10) The use of any false representation or deceptive means to collect or attempt to
> collect any debt or to obtain information concerning a consumer. . . .**
>
> **§ 1692f. Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to
> collect any debt. Without limiting the general application of the foregoing, the
> following conduct is a violation of this section:**
>
> **(1) The collection of any amount (including any interest, fee, charge, or expense
> incidental to the principal obligation) unless such amount is expressly authorized by
> the agreement creating the debt or permitted by law. . . .**

The Federal Trade Commission ("FTC") staff interprets 15 U.S.C. §1692f(1) as follows:

> 2. Legality of charges. A debt collector may attempt to collect a fee or charge in addition
> to the debt if either (a) the charge is expressly provided for in the contract creating the
> debt and the charge is not prohibited by state law, or (B) the contract is silent but the
> charge is otherwise expressly permitted by state law. Conversely, a debt collector may
> not collect an additional amount if either (A) state law expressly prohibits collection of
> the amount or (B) the contract does not provide for collection of the amount and state law
> is silent.  (*Statements of General Policy or Interpretation,  Staff Commentary on the Fair
> Debt Collection Practices Act,* 53 FR 50097, 50108 (Dec. 13, 1988).)

The FDCPA provides for a private right of action, 15 U.S.C. §1692k.

Plaintiff does not allege violations of FHA regulations as a basis for a claim. Rather, the

-5-

FDCPA's references to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) . . . permitted by law," the false representation of the "amount . . . of any debt" and "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt" require reference to whatever non-FDCPA law governs the debt. Here, this includes the FHA regulations.

Accordingly, Defendants' motion to dismiss Plaintiff's property inspection claim should be denied.

## III.   DEFENDANTS' MOTION TO DISMISS THE LATE CHARGES CLAIM SHOULD BE DENIED

### A.   Nationstar's Payoff Statement was an Attempt to Collect a Debt

Defendants next argue that Nationstar's Amended Payoff Statement (Cmplt., App. C) was not an attempt to collect a debt because the statement contained no demand for payment, so there was no violation of the FDCPA. To the contrary, the purpose of a payoff statement is to communicate the amount needed to collect a debt, and it thus qualifies as a communication in connection with the collection of a debt.

The absence of a demand for payment is just one of several factors that come into play when determining whether a communication from a debt collector is made in connection with the collection of a debt. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010). Furthermore, the court in *Gburek* held that an offer to discuss repayment options qualifies as a communication in connection with an attempt to collect a debt. *Id*. Defendants concede that the Amended Payoff Statement contains prospective due dates for optional payments, thus presenting a repayment option similar to the letter in *Gburek*.

The nature of the parties' relationship is another relevant factor courts use to determine whether a communication is attempting to collect a debt. *Id*.  In *Ruth v. Triumph Partnerships,* 577 F.3d 790, 798 (7th Cir. 2009), the court examined a privacy notice which a debt collector sent to a debtor along with a collection letter. The court held the communications fell under the FDCPA because "[t]he only relationship the defendants had with the plaintiffs

arose out of ... the plaintiffs' defaulted debt." (577 F.3d, at 799) Furthermore, Defendants would not have otherwise sent plaintiffs those materials unless they were attempting to collect a debt. *Id*. The relationship between Nationstar and Plaintiff is identical to the relationship in *Ruth*, as they both exclusively arose from a defaulted loan.

*Bailey v. Security National Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998), is not in point. There, the loan had been restructured and Security National was assigned to service the loan after it had been restructured. Such a loan is not in default, and the FDCPA did not apply for that reason. The court stated that if the borrower violated the restructuring agreement and the defendant thereupon attempted to enforce the original, defaulted loan, the FDCPA would apply.

### B.     Nationstar Sought Amounts Not Owed

After a loan is accelerated, there are no scheduled payments, and no late charges are appropriate. *Wells Fargo Bank Minn. N.A. v. Guarnieri,* 308 B.R. 122, 128 (D. Conn. 2004) ("However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments."); *Jackson v. Carrington Mortg. Servs.*, 17cv60516, 2017 WL 4347382, 2017 U.S. Dist. LEXIS 191932, at *9 (S.D.Fla. Nov. 16, 2017). Nationstar violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by falsely and deceptively stating in its Amended Payoff Statement that late charges were owed and that it had the right to charge late charges on a loan that had been accelerated when such fees are unauthorized by the agreement and not permitted by law.

### C.     The Misrepresentation was Material

Defendants attempt to argue that there was no FDCPA violation because the misrepresentation contained in the Amended Payoff Statement was not material. Defendants concede that a misrepresentation is material if it could have influenced the consumer's decisions with regard to the debt. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016). *Janetos* held that materiality is an objective standard. There is no requirement that an FDCPA plaintiff prove reliance or that his decisionmaking was actually affected by a

-7-

representation.

A reasonable consumer would feel compelled to pay off a loan more urgently while being threatened with the prospect of late fees being added to the debt. Nationstar therefore violated §1692e(10) of the FDCPA by falsely and deceptively threatening to charge late fees in order to induce plaintiff to pay a debt, when in fact such late fees were not legal, and could not be sought.

## IV. DEFENDANTS' MOTION TO DISMISS THE RESPA CLAIM SHOULD BE DENIED

### A. Plaintiff Alleged Facts that Establish a RESPA Violation

Defendants argue that Nationstar's February 12, 2019 correspondence was not in reply to Plaintiff's November 9, 2018 QWR so there was no RESPA violation for failure to provide evidence that fees and charges added to Plaintiff's account were genuine or actually incurred. Defendants instead contend that the February 12, 2019 letter was in response to an alleged January letter from Plaintiff.

This argument is not proper for a Rule 12(b)(6) Motion to Dismiss because courts cannot resolve factual issues when ruling on a motion to dismiss. Facts in a complaint are to be taken as true, as long as they provide more details than mere legal conclusions and labels. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, Nationstar's February 12, 2019 letter stated that Nationstar received Plaintiff's correspondence on January 23, 2019, not that Plaintiff sent the correspondence on January 23, 2019. Nationstar is fully aware of the meaning of its language in its February 12, 2019 correspondence and it is only now attempting to misinterpret its own words.

In addition, Nationstar's February 12, 2019 letter directly references inquiries made by Plaintiff in his November 9, 2018 QWR. For instance, Plaintiff's November 9, 2018 QWR specifically requests the "identity, address, and other relevant contact information for the custodian of the collateral file containing the original collateral documents for the above-referenced mortgage loan, including, but not limited to the original note." (Cmplt., App. A) In response to this request, Nationstar stated in its February 12, 2019 letter that "our records

-8-

indicate TIAA, FSB d/b/a EverBank as Owner of Loan Group F-20, is the current owner of the Note. As requested, we have provided the address below." (Cmplt., App. B)

Finally, if Nationstar's February 12, 2019 letter was not in response to Plaintiff's November 9, 2018 QWR, that would mean Nationstar never responded to the QWR. This would still be a violation of 12 U.S.C. §2605(e).

**B.      Nationstar Did Not Properly Respond to the QWR**

Defendants next contend that Nationstar's  February 12, 2019 correspondence complied with RESPA's requirements.  In his November 9, 2018 QWR, Plaintiff requested invoices showing the legitimacy of various fees and charges added to Plaintiff's loan. (Cmplt., App. A) Nationstar refused to provide such information, claiming that "Mr. Cooper is not obligated to respond to requests seeking, confidential, proprietary, or privileged information," and that "invoices to our vendors and our Foreclosure Attorney" constitute such information. (Cmplt., App. B)

Nationstar never explained in its letter why it believes invoices for fees and charges added to the loan balance could be withheld as confidential, proprietary or privileged information. A litigant seeking attorney's fees from a court has to provide enough documentation to substantiate the request, and this is no different.

A response that does not adequately explain the servicer's reasoning is not adequate under RESPA. *James v. Litton Loan Servicing, LP*, 4:09cv147, 2011 WL 59737, 2011 U.S.Dist. LEXIS 361,**25-8 (M.D.Ga. Jan. 4, 2011) (denying Litton's motion for summary judgment and finding that a letter which did not specifically address the reasons Litton believed its actions were correct was not adequate under RESPA).

Thus, Nationstar's February 12, 2019 letter violated 12 U.S.C. §2605 by refusing to provide evidence that the fees and charges added to plaintiff's account were genuine or actually incurred.

**C.      Plaintiff Suffered Damages as a Result of Nationstar's Conduct**

Defendants next contend that the RESPA claim should be dismissed because Plaintiff did

not suffer any damages. Plaintiff suffered actual damages equal to the amounts added to his loan.

In addition, RESPA provides for statutory damages. Nationstar has engaged in a pattern of such conduct, as demonstrated by the multiple violations alleged in the instant litigation as well as numerous lawsuits raising similar violations. *See e.g., Renfroe v. Nationstar Mortg., LLC,* 822 F.3d 1241, 1247 (11th Cir. 2016); *Ponds v. Nationstar Mortgage, LLC,* 15cv8693, 2016 WL 3360675 at *7 (C.D. Cal June 3, 2016); *Gray v. Nationstar Mortg., LLC,* 10cv14375, 2012 WL 359764 at *4 (S.D. Mich. February 2, 2012); *Diffely v. Nationstar Mortgage, LLC,* 17cv1370, 2018 WL 1737780 at *9 (W.D. Wash. April 11, 2018); *Geoffrion v. Nationstar Mortgage LLC,* 182 F.Supp.3d 648, 667-68 (E.D. Tex. 2016). *See also,* Consent Order attached as Appendix M. For the reasons explained above, Defendants' motion to dismiss Plaintiffs' RESPA claim should be denied.

## V. DEFENDANTS' MOTION TO DISMISS THE TILA CLAIM SHOULD BE DENIED

### A. The April 18, 2019 Letter is a Response to Plaintiff's March 28, 2019 Request

Defendants argue that Nationstar's April 18, 2019 letter did not violate TILA's requirement that a mortgage servicer provide an accurate payoff balance upon request.

Part of Defendants' argument includes the unfounded assertion that Nationstar received Plaintiff's March 28, 2019 payoff statement request on April 4, 2019 and not on April 2, 2019. However, United States Postal Service ("USPS") tracking clearly demonstrates that Nationstar received the request on Tuesday April 2, 2019. (Cmplt., App. K) Defendants cannot and do not provide contrary evidence in their Motion to Dismiss. Accordingly, they did violate TILA by not providing an accurate payoff statement within 7 business days after the receipt of Plaintiff's request.

The fact that Nationstar did not mention Plaintiff's payoff request in its April 18, 2019 letter is not a basis for dismissal.

### B. Defendants are Liable under TILA

Defendants argue that the TILA claim should be dismissed because Nationstar is only the mortgage servicer, and not the owner of the loan. However, 12 C.F.R. §1026.36(c)(3), the implementing regulation for 15 U.S.C. §1639g, holds creditors, assignees, and servicers liable for failing to provide an accurate payoff statement within a reasonable time:

> (3) Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer.

Furthermore, 15 U.S.C. §1640(a)(4) provides that any creditor who fails to comply with the requirements of 15 U.S.C. §1639g is liable for actual damages, statutory damages, costs and attorney's fees, and other relief, and 15 U.S.C. §1641 provides that an assignee may be held liable if the violation is apparent on the face of the relevant "disclosure statement."

None of the cases cited by Defendants involved TILA obligations that a servicer would be responsible for implementing. *Knopp v. Wells Fargo Bank, N.A.*, 16cv2330, 2017 WL 7693399, at *6 (N.D. Ill. Jan. 30, 2017), involved an assignee's TILA obligation to inform the borrower of the transfer of the loan. Similarly, *Iroanyah v. Bank of Am.*, 753 F.3d 686 (7th Cir. 2014), dealt with a creditor's notice and disclosure requirements with regard to a lender's right of rescission.

Even if this Court were to hold that Nationstar cannot be held liable for the TILA violations, it is still a necessary party. As servicer, Nationstar has the right to the payments under the Note. Plaintiff is seeking both actual and statutory damages. Plaintiff's actual damages are the amount by which he was overcharged through unauthorized fees. If this Court agrees that such fees and charges were unauthorized by law and that Plaintiff is entitled to actual damages equal to the amounts added and to statutory damages, Nationstar's participation is required in order to ensure that Plaintiff obtains that relief, and Nationstar is therefore a necessary party pursuant to Fed.R.Civ.P. No. 19. *Hashop v. Fed. Home Loan Mort. Corp.*, 171 F.R.D. 208 (N.D.Ill. 1997) (mortgage servicers were necessary parties in cases alleging overescrowing by

servicers, noting that without the participation of the servicers it will be impossible to properly effectuate relief); *In re Ameriquest Mort. Co., Mortgage Lending Practices Lit.*, MDL 1715, 2008 WL 5100909, 2008 U.S Dist. LEXIS 99240 (N.D.Ill. Dec. 2, 2008).

Defendants next contend that TIAA cannot be held liable for the TILA violations because it is not an original creditor under TILA. As stated above, 12 C.F.R. §1026.36(c)(3), the implementing regulation for 15 U.S.C. §1639g, holds creditors, assignees, and servicers liable for failing to provide an accurate payoff statement within a reasonable time. Further, 12 C.F.R. §1026.36(c)(3) goes on to state that "a creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement." 12 C.F.R. §1026.36(3). Finally, 15 U.S.C. §1641 provides that an assignee may be held liable if the violation is apparent on the face of the relevant "disclosure statement."

The relevant "disclosure statement" for the purposes of a violation of §1026.20 is the payoff statement requested on March 28, 2019.  TILA does not define what a "disclosure statement" is, and TILA repeatedly refers to "disclosure statements" that are issued subsequent to the inception of a transaction.  E.g., 15 U.S.C. §1637; 12 C.F.R. §1026.20.  *Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295 (11th Cir. 2016), referenced by Defendants, ignores the fact that TILA expressly provides for post-origination disclosures.

The failure to send a disclosure statement is necessarily apparent on the face of the document, as 15 U.S.C. §1641(e)(2) provides that a violation is apparent on the face of the document if it can be determined to be incomplete by comparing the document to the terms of the Note. The Note provided for payoff statements (App. D Ex. 2 to Def. Mot. To Dismiss), and an absent document is necessarily incomplete.

Defendants are in effect contending that there is no remedy for  the failure to provide an accurate payoff statement within a reasonable time, even though the section was obviously intended to give borrowers an enforceable right to a payoff statement.  TILA should not be construed to produce such an absurd result. *Zbaraz v. Madigan,* 572 F.3d 370, 387 (7th Cir.

-12-

2009).

For all these reasons, Defendants' motion to dismiss the TILA claim should be denied.

## VI.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the complaint should be

denied.

Respectfully submitted,


*/s/Tara L. Goodwin*
Tara L. Goodwin


Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER**
       **& GOODWIN, LLC**
20 S. Clark Street, Suite1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## <u>CERTIFICATE OF SERVICE</u>

I, Tara L Goodwin, hereby certify that on Thursday, September 5, 2019, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

*/s/Tara L Goodwin*
Tara L Goodwin

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com