UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANSARULLAH DAWOUDI, ) <br> on behalf of Plaintiff and the ) <br> class members described herein, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONSTAR MORTGAGE LLC, ) <br> doing business as MR. COOPER and ) <br> TIAA FSB, ) <br> ) <br> Defendants. ) | Case No. 1:19 CV 3783 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ansarullah Dawoudi defaulted on his mortgage payments and now sues his loan servicer, Defendant Nationstar Mortgage LLC (Nationstar), and the owner of the loan, Defendant TIAA FSC (TIAA), for allegedly engaging in illegal credit and collection practices. Plaintiff brings a four-count complaint under the Fair Debt Collection Practices Act (FDCPA), the Real Estate Settlement Procedures Act (RESPA), and the Truth in Lending Act (TILA). Defendants move to dismiss. [19]. For the reasons explained below, this Court grants in part and denies in Defendants' motion.

I. **Background**

    A. **The Complaint's Allegations**

In December 2012, Plaintiff obtained a residential mortgage (the Mortgage). [1] ¶ 28. Plaintiff's Mortgage Agreement provides, in pertinent part:

1

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** . . . Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.

\* \* \*

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** . . . If Borrower fails to make these payments [governmental or municipal charges, fines and impositions] or the payments required by Paragraph 2 [monthly payments of taxes, insurance and other charges], or fails to perform any other covenants or agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of the disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

[19-2] at 7, 8.

Defendant Nationstar has serviced the Mortgage since November 2014. [1] ¶¶ 30, 33. At the time Nationstar acquired the Mortgage, Plaintiff had already defaulted. *Id.* ¶ 31. Nationstar services the loan for Defendant TIAA Bank, which currently owns the loan. *Id.* ¶ 33. Plaintiff asserts that the loan "was accelerated" on or before November 16, 2015. *Id.* ¶ 32.

As detailed below, Plaintiff claims that Defendants engaged in various illegal practices concerning his mortgage.

2

**Refusal to justify charges**. In November 2018, Plaintiff submitted to Nationstar a "qualified written request" (QWR) seeking various information, including third-party invoices, related to certain charges on Plaintiff's loan. *Id.* ¶ 34; [1-1] at 2–3. Nationstar replied in a letter dated February 12, 2019 (the February 2019 Letter) that it had no obligation to provide third-party invoices, claiming such materials constituted "confidential, proprietary, or privileged information." [1] ¶ 35; [1-2] at 2. Plaintiff alleges that such materials are not, in fact, confidential, proprietary, or privileged information. *Id.* ¶ 36.

**Late charges**. On February 12, 2019, Nationstar sent Plaintiff an amended payoff statement (Payoff Statement). *Id.* ¶ 38. The Payoff Statement provided an "estimated payoff amount required to prepay" the mortgage in full. [1-3] at 2. It also warned that because the mortgage "is presently in default," Nationstar could bring a foreclosure action if Plaintiff failed to make payments. *Id.* The Payoff Statement further stated that if "any scheduled payment is received after the Late Charge grace period as set forth in the applicable Note, a Late Charge of $26.20 will be assessed." [1] ¶ 38; [1-3] at 2. Plaintiff claims that, by threatening late charges on an accelerated loan, Nationstar engaged in illegal debt collection practices. *Id.* ¶ 40.

**Inspection fees**. Next, while Plaintiff's mortgage remained in default, Nationstar inspected Plaintiff's home and charged Plaintiff $265 in inspection fees. *Id.* ¶ 46. Plaintiff alleges Nationstar improperly charged these fees when it knew that Plaintiff continued to occupy the property. *Id.* ¶¶ 46–47.

3

**Payoff request**. On March 28, 2019, Plaintiff sent Nationstar a request for a mortgage payoff statement. *Id.* ¶ 51. Nationstar responded not by providing the requested payoff statement, but instead by directing Plaintiff to contact a Nationstar employee for further information. *Id.* ¶ 53. Plaintiff alleges that Nationstar has yet to provide the requested mortgage payoff statement, *id.* ¶ 54, and asserts that both Nationstar and TIAA violated the law by failing to provide it, *id.* ¶¶ 104–05.

B.  **Plaintiff's Claims**

Plaintiff brings a four-count complaint to redress the injuries from Defendants' alleged illegal practices. Count I alleges that Nationstar violated the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) by charging Plaintiff for unauthorized property inspection fees and representing that it possessed a right to collect those fees. [1] ¶ 57. Count II alleges that Nationstar violated the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) by stating that it had the right to charge late charges on a loan that had been accelerated. [1] ¶ 76. Count III alleges that Nationstar violated RESPA, 12 U.S.C. § 2605(e) by refusing to provide evidence—in the form of third-party invoices—that justified its fees and charges. [1] ¶ 93. And finally, Count IV alleges that both Nationstar and TIAA Bank violated TILA, 15 U.S.C. 1639g by failing to provide an accurate payoff balance within a reasonable time after the receipt of a written request for such balance. [1] ¶ 105.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

5

## III. Analysis

Defendants move to dismiss Plaintiff's complaint in its entirety. [19]. This Court considers each claim in order below.

### A. Count I: Inspection Fees

In Count I, Plaintiff alleges that Nationstar violated numerous provisions of the FDCPA by charging Plaintiff for property inspection fees and representing it had the right to collect a balance including those fees. [1] ¶ 57. Nationstar moves to dismiss, arguing that the Mortgage Agreement authorized its actions. [19-1] at 10. Specifically, Nationstar cites Sections 5 and 7 of the Mortgage Agreement, which provide in relevant part:

> **5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** . . . Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.
>
> \*\*\*
>
> **7. Charges to Borrower and Protection of Lender's Rights in the Property.** . . . If Borrower fails to make these payments or the payments required by Paragraph 2, . . . then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2. *Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.*

[19-2] at 7, 8 (emphasis added).

No FDCPA liability lies where a servicer charges fees expressly authorized by a note or mortgage. *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 598 (7th Cir. 2004); *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003). And here, Section 5 of

6

the Mortgage explicitly provides authorization for Nationstar to conduct an inspection in the event Plaintiff defaults. And Plaintiff himself alleges that he did, in fact, default. [1] ¶ 31. Section 7 then authorizes the lender to add to Plaintiff's debt any "amounts disbursed" in the pursuit of protecting the value of Plaintiff's home, as well as the lender's own rights. [19-2] at 8.

Read in conjunction, Sections 5 and 7 clearly permit Nationstar to: (1) inspect Plaintiff's property upon default; and (2) assess Plaintiff any additional fees it incurred to protect its own interests in the event Plaintiff defaults. Accordingly, no FDCPA liability attaches to Nationstar's actions in collecting fees explicitly authorized by the Mortgage Agreement. Other district courts have reached the same conclusion in assessing the plain language of identical or near-identical provisions in mortgage agreements. *See Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 3443173, at *1, 10 (S.D.N.Y. July 17, 2018) (no FDCPA liability for inspection fees where the mortgage agreement provides that the lender may charge fees performed in connection with the default, "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument"); *Kesling v. Countrywide Home Loans, Inc.*, No. CIV.A. 2:09-588, 2011 WL 227637, at *5 (S.D.W. Va. Jan. 24, 2011) (granting summary judgment to lender on FDCPA claim alleging improper inspection fees, where the mortgage instrument provided that "Lender may do whatever is necessary to protect the value of the Property and Lender's rights in the Property," and any "amounts disbursed by Lender . . . shall become an additional debt of Borrower").

7

Attempting to avoid dismissal, Plaintiff argues that certain administrative materials promulgated by the Department of Housing and Urban Development (HUD) prohibit Nationstar from charging inspection fees to a defaulting borrower when the property remains occupied. [27] at 4–7. Plaintiff first cites a HUD regulation, 24 C.F.R. § 203.377, which provides:

> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass.

Plaintiff also cites HUD's handbook, which contains an interpretation of this regulation. That handbook states:

> If there is evidence that the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office, such charges [cost of inspections] are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits.

U.S. Dep't of Housing and Urban Dev., Property Inspection Fees, Handbook for Administration of Insured Home Mortgages, Ch. 9-9(A)(c)(2)(D), available at https://www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4330.1. Finally, Plaintiff also cites a "mortgagee letter" by HUD, which provides:

> It is HUD's intent to permit mortgagees to be reimbursed for the cost of any mandatory inspection which is performed. This includes any inspection made after the mortgagee learns that the property is vacant

8

> or abandoned, or after it has been unable to contact the mortgagor by telephone during the initial 45-day period of a delinquency. Reimbursement for the latter inspection is allowed regardless of whether the property is found to be vacant or occupied, and regardless of whether the mortgagee's representative also talks to the mortgagor about the delinquency during the course of the inspection. Once the property has been found to be occupied, however, no further inspections are required by HUD and reimbursement would not be allowed.

U.S. Dep't of Housing and Urban Dev., Property Inspection Fees, Mortgagee Letter 81-26, 1981 WL 389744 (June 15, 1981).

But none of these authorities supports Plaintiff's argument. To the contrary, the plain language of the regulation *requires* lenders to inspect properties "on a monthly basis" when a loan is in default; it further contains no prohibition against collecting those fees from borrowers. 24 C.F.R. § 203.377. Moreover, HUD handbooks—such as the one Plaintiff relies upon—do not bind this Court. Indeed, HUD handbooks "do not consist of binding regulations," nor do they impose any "binding obligations or legal duties" upon parties. *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 133 (S.D.N.Y. 2015) (quoting *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 275 (1969)); *see also Burroughs v. Hills*, 741 F.2d 1525, 1529 (7th Cir. 1984) (finding a HUD handbook non-binding). And similarly, Plaintiff fails to cite any authority indicating that HUD mortgagee letters bind this Court or supplant parties' express contractual obligations. Even if he did, the plain language of the mortgagee letter fails to support Plaintiff's interpretation, because it speaks to what inspection fees *HUD* would *reimburse* to a lender, not what inspection fees a lender can *collect* from a borrower. For these reasons, this Court finds the HUD administrative materials unpersuasive and inapplicable.

9

In sum, Plaintiff's FDCPA claim fails because the Mortgage Agreement authorizes Nationstar to charge Plaintiff inspection fees in the event of Plaintiff's default. *Singer*, 383 F.3d at 598; *Rizzo*, 351 F.3d at 794. This Court thus dismisses Count I.

B.     **Count II: The Late Charges**

In Count II, Plaintiff alleges that Nationstar violated the FDCPA by attempting to collect post-acceleration late fees when it mailed him the Payoff Statement. [1] ¶¶ 73, 76. Nationstar does not dispute that Plaintiff's loan was accelerated, nor that as a general matter, a "lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated." *Rizzo*, 351 F.3d at 793. Nationstar instead argues that the claim should be dismissed because the Payoff Statement "was not an attempt to collect a debt," and therefore does not implicate the FDCPA. [19-1] at 13.

The FDCPA only imposes liability for communications made "in connection with the collection of any debt." *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998) (quoting 15 U.S.C. §§ 1692e, 1692g). The Seventh Circuit does not adhere to a bright-line rule for determining whether a communication from a debt collector was made in connection with a debt collection. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Rather, courts in this circuit look at several factors, including: (1) whether the debt collector demanded payment in the communication; (2) the relationship between the parties; and (3) the purpose and context of the communication. *Hamilton v. LoanCare, LLC*, No. 19 C 0554, 2019 WL

3973132, at *3 (N.D. Ill. Aug. 22, 2019); *Keller v. Lloyd & McDaniel, PLC*, No. 4:19-CV-17, 2019 WL 2754970, at *2 (N.D. Ind. July 2, 2019); *Ellison v. Fullett Rosenlund Anderson P.C.*, 347 F. Supp. 3d 370, 376 (N.D. Ill. 2018).

Here, these factors weigh in favor of finding the Payoff Statement a communication in connection with the collection of a debt. First, although Nationstar correctly notes—and Plaintiff concedes—that the Payoff Statement does not contain an explicit demand for payment, [27] at 7–8; *see also* [1-3], that factor alone is not dispositive. *Gburek*, 614 F.3d at 385.

Second, the relationship between the parties—Plaintiff and Nationstar—weighs in favor of applying the FDCPA because their relationship "resembles that of debtor and collector." *Ellison*, 347 F. Supp. 3d at 376. Indeed, the Payoff Statement states that Nationstar "is a debt collector," [1-3] at 4, and the parties' relationship arose from Nationstar's servicing of Plaintiff's loan. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009) ("defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt").

Finally, and most importantly, the Payoff Statement confirms that Nationstar sent the communication to collect Plaintiff's debt. The Payoff Statement provides a "balance due" amount and threatens foreclosure proceedings; it also supplies a method for Plaintiff to remit funds, including a specific routing number for Plaintiff to wire funds directly to Nationstar's account. [1-3] at 2. Moreover, as both parties neglected to discuss, the Payoff Statement explicitly states: *"This is an attempt to*

11

*collect a debt* and any information obtained will be used for that purpose." [1-3] at 4 (emphasis added). Viewed in totality and construed in the light most favorable to Plaintiff, this Court finds that the balance of the factors tips in favor of finding the Payoff Statement a communication made in connection with collection of a debt.

Nationstar next argues that the Payoff Statement does not give rise to an actionable FDCPA claim because it contained no "material" misrepresentations. [19-1] at 14–15. To be sure, the FDCPA gives rise to liability only for materially false or misleading statements, meaning that the statement "has the ability to influence a *consumer's* decision." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (quoting *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011)); *see also Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 753 (N.D. Ill. 2016) (the materiality requirement "extends to all claims under the FDCPA."), *aff'd sub nom. Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018).

Defendant contends that the alleged improper late fees did not materially misrepresent Plaintiff's debt because they could not have impacted his decision to pay (or not pay) his debt. [28] at 6. More to the point, Defendant argues that a $78.00 late charge would not have impacted Plaintiff's decision to pay a much larger debt—his $194,000 loan. *Id.* This Court disagrees. Materiality remains a fact-bound inquiry, and courts can only dismiss for failure to plead materiality where a case involves statements "that plainly, on their face, are not misleading or deceptive." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812, 814–15 (7th Cir.

2016)). Here, the parties do not dispute—and the law makes clear—that Nationstar could not legally demand post-acceleration late fees. *See Rizzo*, 351 F.3d at 793. That Nationstar *did* threaten post-acceleration late fees is facially false and misleading; under these circumstances, this Court denies Nationstar's request to dismiss Plaintiff's FDCPA claim for failure to plead materiality. *Boucher*, 880 F.3d at 366.

For these reasons, this Court denies Nationstar's motion as to Count II.

### C. Count III: The RESPA Claim

In Count III, Plaintiff claims that Nationstar violated RESPA by failing to adequately respond to his QWR. [1] ¶¶ 93–94. Nationstar counters that the February 2019 Letter provided responses to everything that Plaintiff requested, except for the third-party invoices, which Nationstar claims constituted confidential information that it had no obligation to provide. [19-1] at 15–17.

RESPA requires a loan servicer to provide "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the server." 12 U.S.C. § 2605(e)(2)(C). The statute, however, does not require a lender to provide documents that it relied upon to answer a request for information when those documents constitute confidential, proprietary, or privileged information. *See* 12 C.F.R. § 1024.35(e)(4). Here, the February Letter complied RESPA's technical requirements. It explains why Nationstar could not make available to Plaintiff certain information he requested, clearly noting that the requested invoices constituted confidential information. [1-2] at 2.

Nonetheless, Plaintiff maintains that the February 2019 Letter remains deficient because Nationstar failed to detail why it deemed the invoices confidential. [27] at 10. Plaintiff cites *James v. Litton Loan Servicing, L.P.*, where a Georgia federal district court held that a loan servicer "had an obligation" to provide Plaintiffs with a "statement of the reasons for which it believes the account of the borrower is correct." No. 4:09-CV-147 CDL, 2011 WL 59737, at *7, 9 (M.D. Ga. Jan. 4, 2011) (quoting 12 U.S.C. § 2605(e)(2)(B)(i)). Plaintiff misplaces reliance upon *James*. The RESPA subsection in that case concerns a lender's obligation to explain its reasons why it considers its account accurate in response to an inquiry by a borrower noting an error on his account. In contrast, Nationstar responded pursuant to Section 2605(e)(2)(C), which concerns a borrower's request for information. That subsection requires only that Nationstar explain "why the information [the borrower] requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C). It does not, as Plaintiff contends, require a servicer to provide any explanation as to why the lender deems such requested information confidential, proprietary, or privileged.

Because Plaintiff fails to sufficiently allege his RESPA claim, this Court dismisses Count III.

### D. Count IV: TILA Claim

In Count IV, Plaintiff claims that both Defendants violated TILA, 15 U.S.C. § 1639g, by failing to send an accurate payoff statement in response to Plaintiff's request for one. [1] ¶¶ 105–06. Defendants argue that Plaintiff's TILA claim should

14

be dismissed because TILA does not apply to either of them. [19-1] at 19–21. This Court agrees with Defendants.

As to Nationstar, the parties agree that Nationstar merely acts as the servicer for Plaintiff's loan. [1] ¶¶ 30, 33; [19-1] at 20. Because it remains well settled that TILA liability does not extend to loan servicers, *Iroanyah v. Bank of Am.*, 753 F.3d 686, 688 n.2 (7th Cir. 2014); *Mathers v. HSBC Bank*, No. 16 C 9572, 2018 WL 3831529, at *2 (N.D. Ill. Aug. 13, 2018); *Knopp v. Wells Fargo Bank, N.A.*, No. 16 C 2330, 2017 WL 7693399, at *6 (N.D. Ill. Jan. 30, 2017), this Court dismisses Count IV against Nationstar.

As to TIAA, the parties agree that TIAA constitutes an assignee of the loan. [27] at 13; [28] at 10. TILA imposes liability on assignees only where "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction." 15 U.S.C. § 1641(e)(1). Here, Plaintiff claims the payoff statement he requested in March 2019—and that Defendants failed to provide—constitutes the relevant "disclosure statement." [1] ¶¶ 51–54. But if that is the case, Plaintiff's claim against TIAA fails.

TILA does not define the term "disclosure statement." *Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295, 1297 (11th Cir. 2016). But "TILA is a disclosure statute," in that it "does not substantively regulate consumer credit but rather requires disclosure of certain terms and conditions of credit *before* consummation of a consumer credit transaction." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001) (emphasis added) (internal quotation marks omitted). Thus, because a payoff

balance "can only be provided only after a loan has been made," there "is no way that the failure to provide a payoff balance can appear on the face of the disclosure statement." *Evanto*, 814 F.3d at 1297–98; *see also Kemp v. Seterus, Inc.*, 348 F. Supp. 3d 443, 448 (D. Md. 2018); *Faiella v. Green Tree Servicing LLC*, No. 16-CV-088-JD, 2017 WL 589096, at *3–4 (D.N.H. Feb. 14, 2017); *Signori v. Fed. Nat. Mortg. Ass'n*, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013). In short, TIAA's failure to provide a payoff statement cannot give rise to assignee liability under TILA. This Court therefore dismisses Count IV against TIAA.

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part Defendants' motion to dismiss [19]. Counts I, III, and IV are dismissed; Count II stands. This Court sets a status conference for April 23, 2020 at 9:45 a.m. in Courtroom 1203, at which time the parties shall come prepared, if possible in light of the COVID-19 crisis, to set remaining dates for the life cycle of the case.

Dated: March 23, 2020

Entered:

_____
John Robert Blakey
United States District Judge

16